

RECEIVED
MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

JUL 2 6 2023

FILED
DOCKETED
DATE        INITIAL

Case No.:23-55456

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

**In re**: *Kimberly Martin-Bragg aka Kimberly Barbour,*
*Debtor,*

**IVAN RENE MOORE, PRO SE**
**Plaintiff/Creditor-Appellant**
**v.**
**KIMBERLY MARTIN-BRAGG AKA KIMBERLY BARBOUR; et al.,**
**Defendants-Appellees**
**HON. GEORGE H. WU, Judge Presiding**
**Case No. 2:22-cv-22-3758-GW**

## ON APPEAL FROM THE JUDGMENT OF THE UNITED STATES BANKRUPTCY COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA
## JUDGE BARRY RUSSEL
## Case No. 2:16-bk-22878-BR

## APPELLANT'S REQUEST FOR JUDICIAL NOTICE
## IN SUPPORT OF APPELLANT'S
## OPENING BRIEF

July 21ˢᵗ , 2023,

IVAN RENE MOORE
Plaintiff-Appellant, in Pro se

# ORIGINAL

1

**TO THE HONORABLE JUSTICES OF THE NINTH CIRCUIT COURT OF APPEALS:**

Pursuant to Federal Rule of Evidence 201, Appellant, Ivan Rene Moore, hereby requests that this Honorable Court take judicial notice of the following facts and documents and in support thereof, Appellant show on to the court as follows:

## I.    Introduction

Under Federal Rule of Evidence 201, the court may take judicial notice of "fact" that is not subject to reasonable dispute because it can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid.-201(b). The Court is permitted to judicially notice an adjudicative fact if it is "not subject to reasonable dispute." Fed. R. Evid. 201(b).

The materials or documents submitted to be judicially noticed are material and relevant to the disposition of this appeal. Said materials or documents will not unduly prejudice Defendants/Appellee in the instant case. Further, under Federal Rule of Evidence 401, evidence is deemed relevant if: "(a) it has any tendency to make a fact more or less probable than it would be without the evidence, and (b) the fact is of consequence in determining the action." Accordingly, "only facts having rational probative value are admissible," i.e., only where it is "[e]vidence which has any tendency in reason to prove any material fact[.]" *United States v. Amaral*, 488 F.2d 1148, 1152 (9th Cir. 1973).

1

Here, the following facts and documents to be judicially noticed has tendency to make a fact more or less probable than it would be without the evidence, and (b) the fact is of consequence in determining this Appeal:

**RJN-1:** Is the true and correct copy of the Trespass to Chattel State Jury verdict and awarded **$2.5 Million** in damages also **$650,000.00** for lost income occasioned by the debtor's intentional and malicious injury to the person of Ivan Rene Moore, Appellant, and property which was adjudicated in LASC#: BC480013, on adequate and independent state grounds. The Bankruptcy Court erroneously discharged the state court judgment and impermissibly nullifies the state jury award. The prefiling order herein sought to be vacated unduly deprived Appellant of his fundamental Constitutional right to access the court to file Bankruptcy Appeal to challenge the Bankruptcy Court's clearly erroneous order.

**RJN-2:** Is the true and correct copy of the Conversion State Jury Verdict and awarded **$2.5 Million** in damages also **$650,000.00** for lost income occasioned by the debtor's intentional and malicious injury to the person of Ivan Rene Moore, Appellant, and property which was adjudicated in LASC#: BC480013, on adequate and independent state grounds. The Bankruptcy Court erroneously discharged the state court judgment and impermissibly nullifies the state jury award.

2

The prefiling order herein sought to be vacated unduly deprived Appellant of his fundamental Constitutional right to access the court to file Bankruptcy Appeal to challenge the Bankruptcy Court's clearly erroneous order.

**RJN-3:** Los Angeles Superior Court Judge the Hon. Michelle Rosenblatt Judgment of November 8, 2013, which awarded Appellant Moore $3.15 Million and Court ordering the Debtor to return all the personal property that were stored at the 6150 Shenandoah Residence including the personal properties that were stored in storage, be returned to Appellant.

Hon. Judge Michelle Rosenblatt's Order in **LASC #: BC480013,** arose from the Debtor/Appellee's intentional and malicious injury to the person of the Appellant and property. **[please see, AA-B at. p.5., ¶4.][RJN-3].** Hon. Judge Michelle Rosenblatt's Order and judgment in **LASC #: BC480013,** is not dischargeable under 11 U.S.C. § 523 (a)(6). All courts in the United States—including federal courts— must treat a state court judgment with the same respect that it would receive in the courts of the rendering state. *Matsushita Elec. Indus. Co. v. Epstein,* 516 U.S. 367, 373 (1996). *See also* Kremer v. Chem. Constr. Corp., 456 U.S. 461, 466 (1982). The Court below erred in failing to treat the state court with the same respect that it would receive in the State of California. Furthermore, 11 U.S.C § 523(a)(6) is self-effectuating, "mean[ing] that no action is necessary by the creditor or the court for them to be excepted from discharge."

3

*Please see, In re Mitchell*, 418 B.R. 282, 286 (BAP 8th Cir. 2009); and nothing more for the Bankruptcy court to do but to give Full Faith and Credit pursuant to Article IV, Section 1 of The Full Faith and Credit Clause, which requires that all states' decisions, public records, and rulings be honored in all the other United States Courts. Accordingly, the lower court's prefiling order enjoining Appellant from litigating the $3.15 Million and Court ordering the Debtor to return all the personal property that were stored at the 6150 Shenandoah Residence including the personal properties that were stored in storage, be returned to Appellant and the Bankruptcy Court's failure to consider the prior Court or and Decision is reversible error. As such, this Honorable Court should reverse the lower court dismissal of Appellant's Bankruptcy Appeal in its entirety in the interest of justice.

Further, the District Court 's order dismissing Appellant's Creditor Bankruptcy Appeal and the Bankruptcy Court's Order dismissing Appellant's Creditor Adversary Proceeding Complaint for the Debtor's Bankruptcy Fraud and preventing Appellant/Creditor to litigate his State Court Judgment of $3.15 Million arising from the Debtor's intentional and Malicious injury to the person of Appellant and property under 11 U.S.C. § 523 (a)(6) in the United States Bankruptcy Court when Bankruptcy Fraud and larceny under 11 U.S.C. § 523 (a)(4) and the dischargeability of the Debtor's debt to Appellant under 11 U.S.C. § 523 (a)(6) and

4

enjoining Appellant's Fundamental Constitutional Rights to litigate the $3.15 Million and Court ordering the Debtor to return all the personal property that were stored at the 6150 Shenandoah Residence including the personal properties that were stored in storage, be returned to Appellant, tread on Appellant's due process right of access to the courts.

**RJN-:4** California Court of Appeal for the Second District in *Moore v Bragg,* No. **B276366,** Affirmed the State Court Judgment in *Moore v Martin-Bragg,* BC480013. Said judgment was based on independent and adequate state grounds and was unduly enjoined by the lower's prefiling Order. Furthermore, the Bankruptcy Court erroneously discharged the state court judgment and impermissibly nullifies the state jury award, the State Court Order, and the Order of the State Higher Court affirming the judgment.

The District Court's dismissal of Appellant's Bankruptcy Appeal when California Second District Court of Appeal *Moore v Bragg,* No. B276366, Affirmed the State Court Judgment in *Moore v Martin-Bragg,* BC480013, unduly deprived Appellant of his fundamental Constitutional right to access the court to file Bankruptcy Appeal to challenge the Bankruptcy Court's clearly erroneous order that overruled and unlawfully interfered with the decision of the Higher Court of the State of California.

5

**RJN-5:** On or about 06/16/17, Wells Fargo Bank obtained a replevin order of the personal properties identified in the property seized in the United States District Court case#: **2:17-cv-02312-VAP-JEM.** The item seized is identified in 2:17-cv-02312-VAP-JEM Dkt.37 at. pp. 9-29.

**RJN-5:** Correct copy of inventory and verification of Seized Items by Wells Fargo Bank and the subject of the pre-filing order. This judicially noticed, fact demonstrates that Appellant's indebtedness and financial obligation to Wells Fargo Bank which formed the basis of the pre-filing order has since been satisfied and therefore moot. Wells Fargo Bank sold the personal property herein referred to as to satisfy its Replevin Judgment.

The remaining consumer transaction debts owed to Wells Fargo Bank were discharged in Appellant's Bankruptcy. Therefore, there exists no "case or controversy" pertaining to the vice encountered when the vexatious litigant pre-filing order was entered. Therefore, the pre-filing order is **Moot** by operation of law.
**RJN-6:** In the Case in *Moore v. Wells Fargo Bank, N.A., et.al.*, Case#: 17-cv-04828-ODW-GJS, Judge Wrights Judgment and order stating that Appellant Moore was entitled to pursue his State Court claims and issues. Also, the Judgement and all State law claims and the claims against the Sherriff's department were dismissed without prejudice.

6

**RJN-7:** In the Case in *Moore v. Wells Fargo Bank, N.A., et.al.*, Case#: 17-cv-04828-ODW-GJS, Judge Wrights vexatious order issued on May 17th 2018 in that matter which states:

> **Any case-initiating pleading submitted by** [Moore] must be screened to determine if does any of the following: seeks to raise any of the claims alleged in this action; attacks, seeks to vacate, void or expunge, or otherwise seeks to challenge in any way – whether directly or indirectly – Wells Fargo's $7.1 million judgment lien or Wells Fargo's right to levy and sell personal property of Moore and the other Judgment Debtors; or seeks to litigate ownership of 6150 Shenandoah Avenue, Los Angeles, California 90065 ("Shenandoah Residence") or the personal property at the Shenandoah Residence. **[2:17-cv-04828-ODW-GJS Dkt. 35].**

**RJN-8:** Caption page of Appellant's Complaint in showing the causes of action in Plaintiff's complaint in 2:17-cv-04828-ODW-GJS which demonstrate that Appellant did not allege a cause of action pertaining to the determination Ownership of the 6150 Shenandoah. As such, the lower court lacked subject matter jurisdiction to enjoin Appellant from litigating the ownership of the 6150 Shenandoah which was purchased by Appellant and his family many years before Appellant's acquaintance with the Debtor who proffered fraudulent documents as evidence to obtain judgment against Appellant and there after unlawfully took possession and control of Appellant's home.

7

The Fifth Amendment protects the right to private property in two ways. First, it states that a person may not be deprived of property by the government without "due process of law," or fair procedures. In addition, it sets limits on the traditional practice of eminent domain, such as when the government takes private property to build a public road. Under the Fifth Amendment, such takings must be for a "public use" and require "just compensation" at market value for the property seized. But in *Kelo v. City of New London* (2005), the Supreme Court interpreted public use broadly to include a "public purpose" of economic development that might directly benefit private parties. In response, many state legislatures passed laws limiting the scope of eminent domain for public use.

Here, the lower lacked subject matter jurisdiction to interfere with Appellant's Fifth Amendment right to private real and personal property and the pre-filing order treads on Appellant's Constitutional right to access the court to litigate the unlawful taking of Appellant's real and personal property.

**RJN-9:** Certified true and correct copy of the transcript of the hearing Judge Barry Russell presiding hearing date May 10th, 2022, In Re Kimberly Barbour (aka Kimberly Martin Bragg) Case No.2:16-bk-22878-BR. On page 11 lines 4 to 13 the transcript shows that the bankruptcy Judge in the Kimberly Barbour (aka Kimberly Martin Bragg proceeding found that the Judge Otis Wright ruling did not apply to

8

the issues in the Kimberly Barbour (aka Kimberly Martin Bragg bankruptcy

proceeding. Therefore, Appellant Moore was not required to obtain a prefiling

order prior to filing Appellant Moore's bankruptcy appeal in this matter.

**RJN-10:** The Honorable Judge Holly J. Fuji's Minute Order of On August 26, 2020, in which in relying on the Appellee's Declaration, the Court held:

> "Facts essential to jurisdiction for a contempt proceeding are (1) the making of the order; (2) knowledge of the order; (3) ability of the respondent to render compliance, [and] (4) willful disobedience of the order". (Application of Liu (1969) 273 Cal.App.2d 135, 140.).

> The Court finds that based on Defendant's declaration, there is **no possibility that Defendant can comply with the Court's November 8, 2013, judgment. Defendant has declared, under the penalty of perjury, that she no longer possesses any of the property at issue in the November 8, 2013, judgment due to the writ executed by Wells Fargo.** Thus, under Liu, there is no basis for this Court to hold Defendant in contempt or order an OSC re: contempt. Plaintiff provides no legal authority to support an argument that inconsistent or contradictory statements in pleadings or affidavits or affidavits rise to the level of contemptable behavior, or that inconsistent and contradictory statements are per se false and warrant a finding of contempt. **RJN-10 at. p. 8., ¶¶ 2-3.]**

**RJN-11:** True and correct copies of the Los Angeles Sherriff's Department

raid at the debtor's Kimberly Martin-Bragg Aka Kimberly Barbour resident on July

7th, 2021, located at 6150 Shenandoah Ave Los Angeles, California 90056, based on

a Writ of Possession issues by the Los Angeles Superior Court on May 20th 2021

and Order of Judge Rosenblatt issued on November 8th 2013.

**RJN-12:** True and correct copies of the Los Angeles Sherriff's Department raid at the debtor's Kimberly Martin-Bragg Aka Kimberly Barbour resident on July 7th, 2021, located at 6150 Shenandoah Ave Los Angeles, California 90056, based on a Writ of Possession issues by the Los Angeles Superior Court on May 20th 2021 and Order of Judge Rosenblatt issued on November 8th 2013.

**RJN-13:** True and correct copies of the Los Angeles Sherriff's Department raid at the debtor's Kimberly Martin-Bragg Aka Kimberly Barbour resident on July 7th, 2021, located at 6150 Shenandoah Ave Los Angeles, California 90056, based on a Writ of Possession issues by the Los Angeles Superior Court on May 20th 2021 and Order of Judge Rosenblatt issued on November 8th 2013.

**RJN-14:** True and correct copies of the Los Angeles Sherriff's Department raid at the debtor's Kimberly Martin-Bragg Aka Kimberly Barbour resident on July 7th, 2021, located at 6150 Shenandoah Ave Los Angeles, California 90056, based on a Writ of Possession issues by the Los Angeles Superior Court on May 20th 2021 and Order of Judge Rosenblatt issued on November 8th 2013.

The personal properties and legal and personal documents in question were the personal property that were the subject of the State Court Judgment in **LASC #: BC480013,** which arose from the Debtor/Appellee's intentional and malicious injury to the person of the Appellant and property to which Honorable Judge

10

Michelle Rosenblatt ordered the Debtor to return Mr. Moore, the Appellant in the instant Appeal. **RJN-2 at. p.5., ¶4.].**

## II. ARGUMENT

### A. The material to be noticed and its relevance to this case

Under Fed. R. Evid., Rule 201(d), judicial notice is mandatory "if requested by a party and [the court is] supplied with the necessary information. " Fed. R. Evid., Rule 201(b) further provides that "[a] judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(l)-(2).

A "court may take judicial notice of matters of public record." Lee v. City of Los Angeles, 250 F.3d 668,689 (9th Cir. Cal. 2001). "[A] party requesting judicial notice bears the burden of persuading the trial judge that the fact is a proper matter for judicial notice." In re Tyrone F. Conner Corporation,140 B.R. 771, 781 (Bankr. E.D. Cal. 1992). Here, the adjudicative fact sought to be noticed is in fact proper for notice under FRE 201, and the facts are not subject to dispute and is capable of immediate and accurate determination by resort to a source whose accuracy cannot reasonably be questioned.

11

In other words, "the fact must be one that only an unreasonable person would insist on disputing." United States v. Jones, 29 F.3d 1549, 1553 (11th Cir.1994).

Here, the documents to be judicially noticed are both federal and the State of California Superior Court's records and are capable of immediate and accurate determination by resort to a source whose accuracy cannot reasonably be questioned.

Furthermore, the documents are part of the public record and may be judicially noticed to show, for example, that a judicial proceeding occurred or that a document was filed in another court case, but a court may not take judicial notice of findings of facts from another case. *See Wyatt v. Terhune*, 315 F .3d 1108, 1114 & n. 5 (9th Cir.2003); Lee v. City of Los Angeles, 250 F.3d 668 (9th Cir.2001); Jones, 29 F.3d at 1553.

Because "[t]he court may take judicial notice at any stage of the proceeding," it may be taken for the first time on appeal. Fed. R. Evid. 201 ( d); see *Bryant v. Carleson*, 444 F.2d 353, 357 (9th Cir. 1971). Paragraph (b)(2) of Rule 201 states in part that "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it: ... can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Plaintiffs seek judicial notice of facts pertaining "[T ]he most frequent use of judicial notice of ascertainable facts is in noticing the content of court records." *Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 ( 4th Cir. 1989).

12

Accordingly, Court has held that it "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." See for example, *U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992).

## III.  CONCLUSION

For the foregoing reasons, the Court should grant Appellant Ivan Rene Moore's Request to take judicial notice of the Documents and things which contain specific facts proffered by Appellant Moore in Support of Appellant's petition for Request of Judicial Notice

Dated:  July 22nd, 2023

Respectfully Submitted,

Ivan Rene Moore
Appellant in Pro se

13

## CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the:

**APPELLANT IVAN RENE MOORE'S OPENING BRIEF WITH**

**APPENDIX A-N AND REQUEST FOR JUDICIAL NOTICE IN SUPPORT**

**OF APPELLANT'S OPENING BRIEF**

This Document has been served upon by U.S. Mail, postage prepaid, addressed to:

### SEE ATTACHED SERVICE LIST

Dated: July 22nd , 2023

Ivan Rene Moore
Appellant Pro se

14

## PROOF OF SERVICE

I, the undersigned, declare that I am employed in the city of Los Angeles, California. I am over the age of eighteen (18) years and I am not a party to the within action.

On **July 22nd 2023**, I served the following document:

### APPELLANT IVAN RENE MOORE'S OPENING BRIEF WITH

### APPENDIX A-N AND REQUEST FOR JUDICIAL NOTICE IN SUPPORT

### OF APPELLANT'S OPENING BRIEF

**[X]   BY MAIL- I placed each such sealed envelope, with postage thereon fully prepaid for first class mail, for collection and mailing at Los Angeles, California, following ordinary business practices.**

[ ]    FED- I declare under the penalty of perjury under the laws of the United States of America.

**I declare under penalty of perjury under the laws of the United States of America the foregoing is true and correct.**

*DATED:* **July 22nd 2023**

_____
  Devra Allen

15

# SERVICE LIST

**Steven A. Schuman**
**Leonard Dicker and Schreiber LLP**
**10940 Wilshire Boulevard Suite 2100**
**Los Angeles, CA 90024-3936**
**Attorney for Kimberley Martin Bragg**


**Ronald Hills**
**1236 Redondo Blvd**
**Los Angeles, California 90019**

# REQUEST FOR JUDICIAL NOTICE

# 1

40

SUPERIOR COURT OF THE STATE OF CALIFORNIA
FOR THE COUNTY OF LOS ANGELES

IVAN RENE MOORE,                                    ) Case No. BC 480013
                                                    )
                    Plaintiff,                      )
                                                    )
                                                    ) Special Verdict-Conversion
        v.                                          )
                                                    )
                                                    )
KIMBERLY MARTIN-BRAGG,                              )
                    Defendants                      )
_____)

# FILED

**LOS ANGELES SUPERIOR COURT**

JUL 2 9 2013

JOHN A. CLARKE, CLERK

_Jeff W. Lipp_ ✓

BY JEFF W. LIPP, DEPUTY

We answer the questions submitted to us as follows:

1. Did IVAN RENE MOORE own/possess/have a right to possess any of the following items:

(a) Clothing, shoes, kitchen equipment and other personal property?
**12** Yes **0** No

(b) Piano?
**12** Yes **0** No

(c) One or more of the following: 2 automobiles, 1 motorcycle, auto tools, auto parts?
**12** Yes **0** No

(d) Recording Console SSL K?
**12** Yes **0** No

(e) Music, Sound and Recording Equiptment?
**12** Yes **0** No

(f) Musical Instruments?
**12** Yes **0** No

(g) Business Property, including computers, monitors, miscellaneous equipment, documents, furniture, tapes, televisions?
**0** Yes **12** No

(i) Masters?
**12** Yes **0** No

If your answer to any of the items in question 1 is yes, then answer question 2. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

2. Did KIMBERLY MARTIN-BRAGG intentionally and substantially interfere with any of IVAN RENE MOORE's property by [[taking possession of/preventing IVAN RENE MOORE from having access to, or destroying, or refusing to return] any of items to chich you checked "yes" in question 1 after IVAN RENE MOORE demanded its return]?

**12** Yes **0** No

If your answer to question 2 is yes, then answer question 3. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

3. Did IVAN RENE MOORE consent?

__O__ Yes __12__ No

If your answer to question 3 is no, then answer question 4. If you answered yes, stop here, answer no further questions, and have the presiding juror sign and date this form.

4. Was IVAN RENE MOORE harmed?

__12__ Yes __O__ No

If your answer to question 4 is yes, then answer question 5. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

5. Was KIMBERLY MARTIN-BRAGG's conduct a substantial factor in causing IVAN RENE MOORE's harm?

__12__ Yes __O__ No

If your answer to question 5 is yes, then answer question 6 and 7. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

6. What are IVAN RENE MOORE's damages?

a. For the fair market value of the property:


$ __2.5 million__
__(2,500,000)__
$ __650,000__

b. For lost profits:

TOTAL $ __3,150,000__

7. Do you recommend that the Court order KIMBERLY MARTIN-BRAGG to return any of the items checked yes in Question 1 to IVAN RENE MOORE instead of awarding some or all of the damages in 6a?

__12__ Yes __O__ No

8. If your answer to question 7 is yes, which items do you recommend the Court order to be returned (enter the letter(s) or print the name of the item(s))?

__Clothing, shoes, kitchen equipment, personal property, piano, SSLK console,__
__music/sound/recording equipment, musical instruments, masters, '71 Camaro__
__personal document__

If your answer to question 7 is yes and the Court follows your recommendation, then answer question 9. If your answer is no, stop here, answer no further question

and have the presiding juror sign and date this form.

9. If the property listed in question 8 is returned to IVAN RENE MOORE, by what amount, if any, should the damages be reduced? $ **2.5 million**

Signed: _____
Presiding Juror

Dated: **7/29/2013**

After all verdict forms have been signed, notify the court attendant that you are ready to present your verdict in the courtroom.

# REQUEST FOR JUDICIAL NOTICE

# 2

46

SUPERIOR COURT OF THE STATE OF CALIFORNIA
FOR THE COUNTY OF LOS ANGELES

IVAN RENE MOORE,                          ) Case No. BC 480013
                                          )
                                          )
                    Plaintiff,            )
                                          )
                                          ) Special Verdict-Trespass
         v.                               ) to Chattel
                                          )
                                          )
    KIMBERLY MARTIN-BRAGG,                )
             Defendants                   )
                                          )
_____ )

# FILED

LOS ANGELES SUPERIOR COURT

JUL 2 9 2013

JOHN A. CLARKE, CLERK

Jeff W. Lipp ✓

BY JEFF W. LIPP, DEPUTY

We answer the questions submitted to us as follows:

1. Did IVAN RENE MOORE own/possess/have a right to possess any of the following items:

(a) Clothing, shoes, kitchen equipment and other personal property?
    **12** Yes **0** No

(b) Piano?
    **12** Yes **0** No

(c) One or more of the following: 2 automobiles, 1 motorcycle, auto tools, auto parts?
    **12** Yes **0** No

(d) Recording Console SSL K?
    **12** Yes **0** No

(e) Music, Sound and Recording Equiptment?
    **12** Yes **0** No

(f) Musical Instruments?
    **12** Yes **0** No

(g) Business Property, including computers, monitors, miscellaneous equipment, documents, furniture, tapes, televisions?
    **0** Yes **12** No

(i) Masters?
    **12** Yes **0** No

If your answer to any of the items in question 1 is yes, then answer question 2. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

2. Did KIMBERLY MARTIN-BRAGG intentionally interfere with IVAN RENE MOORE's use or possession of any of IVAN RENE MOORE's property or damage his property ?

    **12** Yes **0** No.

If your answer to question 2 is yes, then answer question 3. If you answered no, stop here,

answer no further questions, and have the presiding juror sign and date this form.

3. Did IVAN RENE MOORE consent?

___0___ Yes ___12___ No

If your answer to question 3 is no, then answer question 4. If you answered yes, stop here, answer no further questions, and have the presiding juror sign and date this form.

4. Was IVAN RENE MOORE harmed?

___12___ Yes ___0___ No

If your answer to question 4 is yes, then answer question 5. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

5. Was KIMBERLY MARTIN-BRAGG's conduct a substantial factor in causing IVAN RENE MOORE's harm?

___12___ Yes ___0___ No

If your answer to question 5 is yes, then answer question 6 and 7. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

6. What are IVAN RENE MOORE's damages?

a. For the fair market value of the property:

$ __2.5 million__
($2,500,000)

7. Do you recommend that the Court order KIMBERLY MARTIN-BRAGG to return any of the items checked yes in Question 1 to IVAN RENE MOORE instead of awarding some or all of the damages in 6a?

___12___ Yes ___0___ No

8. If your answer to question 7 is yes, which items do you recommend the Court order to be returned (enter the letter(s) or print the name of the item(s))?

Clothing, shoes, kitchen equipment, personal property, piano, SSLK console, music/sound/recording equipment, musical instruments, masters, '71 Camarro, **Legal documents**

If your answer to question 7 is yes and the Court follows your recommendation, then answer question 9. If your answer is no, stop here, answer no further questions, and have the presiding juror sign and date this form.

9. If the property listed in question 8 is returned to IVAN RENE MOORE, by what amount, if any, should the damages be reduced? $ __2.5 million__

Signed: _____
                    Presiding Juror

Dated: 7/29/2013

After all verdict forms have been signed, notify the court attendant that you are ready to present your verdict in the courtroom.

# REQUEST FOR JUDICIAL NOTICE
# 3



CONFORMED COPY
Superior Court of California
County of Los Angeles

SUPERIOR COURT OF THE STATE OF CALIFORNIA **NOV 08 2013**

FOR THE COUNTY OF LOS ANGELES Sherri R. Carter, Executive Officer/Clerk

By Jeff W. Lipp, Deputy

| | |
|---|---|
| IVAN RENE MOORE, | ) Case No. BC480013 |
| | ) |
| Plaintiff, | ) |
| | ) Interlocutory |
| | ) Judgment |
| v. | ) |
| | ) |
| KIMBERLY MARTIN-BRAGG | ) |
| Defendant. | ) |

This action came on regularly for trial on July 15, 2013, in Department 40 of the Los
Angeles Superior Court, the Honorable Michelle R. Rosenblatt, Judge presiding.
Plaintiff IVAN RENE MOORE appeared *in propria persona* and Defendant KIMBERLY
MARTIN-BRAGG appeared by attorney Thomasina M.Reed, Esq.

On October 19, 2012, the Court had granted a motion to consolidate BC480013 with
BC483652. On July 15, 2013, at the request of Plaintiff, and with no objection from
Defendant Martin-Bragg the Court bifurcated the causes of action for trespass to chattel,
conversion of personal property, and Civil Code section 1965 from the remaining causes
of action in BC483652 and the trial was heard as to those causes of action alone.

A jury of 12 persons was regularly impaneled and sworn. Witnesses were sworn and
testified. The Court granted Plaintiff's request to amend the complaint to conform to
proof to add a prayer for the return of the personal property. After hearing the evidence
and arguments of counsel, the jury was duly instructed by the Court and the cause was
submitted to the jury, with directions to return each special verdict and to include a
recommendation (advisory verdict) to the Court whether the property should be returned
and if so, the jury's recommendation as to the reduction in damages to be awarded. The

1

jury was instructed to complete the verdicts on the trespass to chattel and on the conversion but that the damages award is in the alternative.

On the conversion cause of action, the jury verdict was as follows:

1. Did Ivan Rene Moore own/possess/have a right to possess any of the following items:

(a) Clothing, shoes, kitchen equipment, and other personal property? YES

(b) Piano: YES

(c) One or more of the following: automobiles, 1 motorcycle, auto tools, auto parts? YES

(d) Recording Console SSLK? YES

(e) Music, Sound and Recording Equipment? YES

(f) Musical Instruments? YES

(g) Business property, including computers, monitors, miscellaneous equipment, documents, furniture, tapes, televisions? NO

(h) Masters? YES

2. Did Kimberly Martin-Bragg intentionally and substantially interfere with any of Ivan Rene Moore's property by taking possession of/preventing Ivan Rene Moore from having access to, or destroying, or refusing to return any of items to which you checked "yes" in question 1 after Ivan Rene Moore demanded its return? YES

3. Did Ivan Rene Moore consent? NO

4. Was Ivan Rene Moore harmed? YES

5. Was Kimberly Martin-Bragg's conduct a substantial factor in causing Ivan Rene Moore's harm? YES

6. What are Ivan Rene Moore's damages?

a. For fair market value of the property: $2.5 million ($2,500,000.00)

b. For lost profits: $650,000

Total: $3,150,000

2

7. Do you recommend that the Court order Kimberly Martin-Bragg to return any of the items checked YES in Question 1 to Ivan Rene Moore instead of awarding some or all of the damages in 6a? YES

8. If your answer to question 7 is yes, which items do you recommend the Court order to be returned? Clothing, shoes, kitchen equipment, personal property, piano, SSLK console, masters, '71 Camaro, personal legal documents.

9. If the property in question 8 is returned to Ivan Rene Moore, by what amount, if any should the damages be reduced? $2.5 million

On the trespass to chattel cause of action, the jury verdict was as follows:

1. Did Ivan Rene Moore own/possess/have a right to possess any of the following items:

(a) Clothing, shoes, kitchen equipment, and other personal property? YES

(b) Piano:   YES

(c) One or more of the following: automobiles, 1 motorcycle, auto tools, auto parts? YES

(d) Recording Console SSLK? YES

(e) Music, Sound and Recording Equipment?  YES

(f) Musical Instruments? YES

(g) Business property, including computers, monitors, miscellaneous equipment, documents, furniture, tapes, televisions? NO

(h) Masters?  YES

2. Did Kimberly Martin-Bragg intentionally interfere with Ivan Rene Moore's use or possession of any of Ivan Rene Moore's property or damage his property?   YES

3. Did Ivan Rene Moore consent? NO

4. Was Ivan Rene Moore harmed? YES

5. Was Kimberly Martin-Bragg's conduct a substantial factor in causing Ivan Rene Moore's harm?  YES

6. What are Ivan Rene Moore's damages?

a. For fair market value of the property: $2.5 million ($2,500,000.00)

3

7. Do you recommend that the Court order Kimberly Martin-Bragg to return any of the items checked YES in Question 1 to Ivan Rene Moore instead of awarding some or all of the damages in 6a? YES

   8. If your answer to question 7 is yes, which items do you recommend the Court order to be returned? Clothing, shoes, kitchen equipment, personal property, piano, SSLK console, masters, '71 Camaro, personal legal documents.

   9. If the property in question 8 is returned to Ivan Rene Moore, by what amount, if any should the damages be reduced? $2.5 million

On the Civil Code section 1965 cause of action, the jury verdict was as follows:

   1. Did Ivan Rene Moore own/possess/have a right to possess any of the following items:

   (a ) Clothing, shoes, kitchen equipment, and other personal property? YES

   (b) Piano: YES

   (c ) One or more of the following: automobiles, 1 motorcycle, auto tools, auto parts?
YES

   (d) Recording Console SSLK? YES

   (e) Music, Sound and Recording Equipment? YES

   (f) Musical Instruments? YES

   (g) Business property, including computers, monitors, miscellaneous equipment,
documents, furniture, tapes, televisions? NO

   (h) Masters? YES

   2. Was the property owned, possessed or which Ivan Rene Moore had the right to possess in 6150 Shenandoah at the time Ivan Rene Moore vacated the premises? YES

   3. Did Ivan Rene Moore request from Kimberly Martin-Bragg or her attorney, in writing, within 18 days of vacating 6150 Shenandoah Avenue, the surrender of the personal property? YES

   4. Did the written request include a description of the personal property and specify a mailing address of Ivan Rene Moore? NO

4

In accordance with the verdict of the jury, the Court renders judgment for Plaintiff IVAN RENE MOORE against KIMBERLY MARTIN-BRAGG on the causes of action for trespass to chattel and conversion and for Defendant KIMBERLY MARTIN-BRAGG on the Civil Code section 1965 cause of action. The Court awards judgment to Plaintiff IVAN RENE MOORE against Defendant KIMBERLY MARTIN-BRAGG in the sum of three million, one hundred and fifty thousand dollars ($3,150,000.00) with interest thereon together with costs in the amount of $_____.

The jury recommends that Plaintiff IVAN RENE MOORE is entitled to the return of personal property specifically identified, to wit, clothing, shoes, kitchen equipment, personal property, piano, SSLK console, Masters, '71 Camaro, personal legal documents and recommends a reduction of the verdict to six hundred fifty thousand dollars ($650,000) should the property be returned.

The Court follows the recommendation of the jury that IVAN RENE MOORE be entitled to the return of his personal property, which the Court finds includes all personal property that was proved at trial to be at 6150 Shenandoah at the time IVAN RENE MOORE was evicted.

The Court grants Plaintiff IVAN RENE MOORE's request for return of property and orders KIMBERLY MARTIN-BRAGG to return IVAN RENE MOORE'S clothing, shoes, kitchen equipment, personal property, piano, SSLK console, masters, '71 Camaro, and personal legal documents consistent with the evidence presented at trial. This order provides that IVAN RENE MOORE is entitled to the return of all of said property in KIMBERLY MARTIN-BRAGG'S possession or control including that which is in storage. KIMBERLY MARTIN-BRAGG, her agents and anyone acting on her behalf are ordered not to sell, give away, damage or keep from IVAN RENE MOORE any of the property that is ordered to be returned. KIMBERLY MARTIN-BRAGG is ordered to have the property returned to IVAN RENE MOORE.

5

Additionally, if the items, or any of them, are not returned, IVAN RENE MOORE may seek enforcement of the judgment for possession of personal property in accordance with Code of Civil Procedure sections 714.010 et seq. The Court will make such further orders as is necessary to effectuate the enforcement of the judgment, including an order for removal of the SSLK Console from 6150 Shenandoah Avenue as it requires professional disassembly.

The Court will reduce the judgment in an amount to be determined by this Court up to $650,000 should Plaintiff receive the return of his property. If KIMBERLY MARTIN-BRAGG returns only a portion of the property or the property is damaged to the extent that it is unusable, Plaintiff may apply to the Court by way of noticed motion for a further Order regarding an offset consistent with the evidence presented at trial and with this judgment.

This judgment is interlocutory due to the bifurcation of pending causes of action unrelated to Plaintiff's personal property. However, the judgment is enforceable.

Dated: November 8, 2013

**MICHELLE R. ROSENBLATT**

Michelle R. Rosenblatt, Judge

6

# REQUEST FOR JUDICIAL NOTICE

# 4

Filed 9/8/17 Moore v. Martin-Bragg CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| IVAN RENE MOORE, | B276366 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC480013) |
| v. | |
| KIMBERLY MARTIN-BRAGG, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Michelle R. Rosenblatt and Michael M. Johnson, Judges. Affirmed.

Ivan Rene Moore, in pro per., for Plaintiff and Respondent.

Thomasina M. Reed, The Newell Law Firm, Felton T. Newell, for Defendant and Appellant.

# REQUEST FOR JUDICIAL NOTICE

5

1  MICHELE SABO ASSAYAG, SBN 109540
2  JOSHUA K. PARTINGTON, SBN 275939
   ASSAYAG ❖ MAUSS
3  A Limited Liability Partnership
   2915 Red Hill Avenue, Suite A200
4  Costa Mesa, California  92626
   Telephone:  (714) 427-6800
5  Fax:  (714) 427-6888
   E-mail: efilings@amlegalgroup.com
6
7  Attorneys for Judgment Creditor,
   WELLS FARGO BANK, N.A.
8
                 UNITED STATES DISTRICT COURT
9                CENTRAL DISTRICT OF CALIFORNIA
10
   WELLS FARGO BANK, N.A.,          )  Case No. 2:17-cv-2312 VAP (JEMx)
11                                   )
                      Plaintiff,     )  **INVENTORY AND**
12                                   )  **VERIFICATION OF ITEMS**
       vs.                           )  **SEIZED PURSUANT TO ORDER**
13                                   )  **RE: INSTRUCTION TO U.S.**
   RUFFTOWN ENTERTAINMENT            )  **MARSHAL TO LEVY UPON**
14 GROUP, INC., RADIO MULTI          )  **PERSONAL PROPERTY OF**
   MEDIA, INC., RENE MOORE MUSIC,)   **JUDGMENT DEBTORS;**
15 INC., and IVAN RENE MOORE,        )  **MEMORANDUM OF POINTS AND**
                                     )  **AUTHORITIES**
16                                   )
                                     )
17                    Defendants.    )  [Declaration of Kimberly Barbour and
18                                   )  Request for Judicial Notice
                                     )  concurrently-filed herewith]
19                                   )
                                     )
20                                   )
                                     )
21                                   )
                                     )
22 _____ )
23
24      Pursuant to this Court's Order Denying the Motion of Ivan Rene Moore to
25 Vacate, Recall Levy, or Void Order of Instruction to U.S. Marshal, Judgment Creditor,
26 Wells Fargo Bank, N.A. ("Wells Fargo" or "Bank"), hereby submits the following
27 Inventory and Verification of Items Seized Pursuant to Order re: Instruction to U.S.
28 Marshal to Levy Upon Personal Property of Judgment Debtors ("Verification Brief").

ASSAYAG ❖
MAUSS

-1-

1   This Verification Brief is made upon the grounds that Wells Fargo has a secured and

2 perfected interest in the subject personal property identified within the Verification

3 Brief and belonging to Ivan Rene Moore, Rufftown Entertainment Group, Inc., Radio

4 Multi Media, Inc., and/or Rene Moore Music, Inc. (collectively, the "Judgment

5 Debtors"). This Verification Brief is also made upon the grounds that Wells Fargo, a

6 judgment creditor of Judgment Debtors, is owed no less than $7,136,505.63 and

7 therefore, is entitled to execute upon Judgment Debtors' assets and apply the proceeds

8 from the sale of those assets to the amount due and owing under the Judgment, subject

9 to the procedures provided under 28 U.S.C. § 3203.

10       This Verification Brief is based upon the attached Memorandum of Points

11 and Authorities, the concurrently-filed declaration of Kimberly Barbour, the

12 concurrently-filed Request for Judicial Notice, the previously filed Notice of Levy

13 [Document Number 29], the previously filed declaration of Karen Troutman [Document

14 Number 31], the previously filed declaration of Edward Testo [Document Number 32]

15 and all of the pleadings, files, and records in this case.

17 DATED: June 16, 2017           ASSAYAG ❖ MAUSS

18                               A Limited Liability Partnership

20                           By: /s/*Joshua K. Partington*

                              JOSHUA K. PARTINGTON

21                           Attorneys for Judgment Creditor,

22                           WELLS FARGO BANK, N.A.

INVENTORY AND VERIFICATION OF ITEMS SEIZED

1
## MEMORANDUM OF POINTS AND AUTHORITIES

2
## I.   FACTUAL BACKGROUND.

3          On or about May 11, 2015, the United States District Court for the Eastern

4   District of Wisconsin entered an Amended Judgment ("Judgment") in favor of

5   Judgment Creditor, Wells Fargo Bank, N.A. ("Wells Fargo" or "Bank"), and as against

6   Ivan Rene Moore, Rufftown Entertainment Group, Inc., Radio Multi Media, Inc., and

7   Rene Moore Music, Inc. (collectively, the "Judgment Debtors").   See, Request for

8   Judicial Notice ("RJN"), Exhibit "1."  The Judgment against Judgement Debtors is for

9   the sum of $7,106,037.28.  _Id_.  Additionally, the Judgment provides that Wells Fargo

10  "may replevin the intangible property, personal property, royalties, profits and other

11  collateral [...]."  _Id_.  On or about July 14, 2016, the United States District Court for the

12  Central District of California registered the Judgment in Case Number 2:16-mc-00093-

13  UA.  See, RJN, Exhibit "2."  On or about August 11, 2016, a Notice of Judgment Lien,

14  as against Judgment Debtors, was filed with the California Secretary of State, as

15  document number 16-7542149322 ("Notice of Lien").  See, RJN, Exhibit "3."

16          On or about September 28, 2016, Kimberly Barbour, aka Kimberly Martin-

17  Bragg ("Ms. Barbour"), filed a voluntary Chapter 7 bankruptcy petition in the United

18  States Bankruptcy Court for the Central District of California, thereby initiating Case

19  Number 2:16-bk-22878-BR.   Ms. Barbour was in possession of certain personal

20  property that is subject to replevin and/or repossession pursuant to Wells Fargo's rights

21  under the Judgment.  See, Declaration of Kimberly Barbour ("Barbour Decl."), ¶¶ 4-6.

22  On or about December 21, 2016, Wells Fargo filed a Motion for Relief from the

23  Automatic Stay with respect to the personal property.  See, RJN, Exhibit "4."  Ivan

24  Rene Moore[1] ("Mr. Moore"), among others, was provided with notice of Wells Fargo's

25  Motion for Relief from the Automatic Stay and further objected to the Motion.  _Id_.  On

26

27  _____

28  [1] On or about October 9, 2012, Ivan Rene Moore was designated a Vexatious Litigant as defined by California Code of Civil Procedure § 391, et seq.  See, RJN, Exhibit "10," Page 2.  As such, Mr. Moore's name appears on the Vexatious Litigant List, maintained by the Judicial Council of California.  See, RJN, Exhibit "11."

1    or about January 19, 2017, in spite of oral argument by Ivan Rene Moore in opposition

2    to Wells Fargo's Motion for Relief from the Automatic Stay, the Motion for Relief from

3    the Automatic Stay was granted, thereby terminating the automatic stay as to Wells

4    Fargo with respect to the personal property of Judgment Debtors and further permitting

5    Wells Fargo to exercise all of its rights and pursue all of its remedies with respect to its

6    security interest in and to the personal property of Judgment Debtors held at the

7    residence of Ms. Barbour.  See, RJN, Exhibits "5" and "6."

8                On or about February 3, 2017, the United States District Court for the

9    Central District of California issued Writs of Execution in favor of Wells Fargo and as

10   against Judgment Debtors.  See, RJN, Exhibit "7."  In connection with the levy upon the

11   Writs of Execution and in coordination with the collection of the personal property of

12   Judgment Debtors from the residence of Ms. Barbour, on or about March 10, 2017,

13   Wells Fargo filed, with this Court, an Ex Parte Application for Order re: Instruction to

14   U.S. Marshal to Levy Upon Personal Property (the "Ex Parte Application").  See, RJN,

15   Exhibit "8."  On or about March 27, 2017, this Court entered an Order re: Instruction to

16   U.S. Marshal to Levy Upon Personal Property of Judgment Debtors ("Order re: Levy").

17   See, RJN, Exhibit "9."  The Order re: Levy authorized the U.S. Marshal to seize those

18   items of personal property listed in the Ex Parte Application (the "Authorized Items").

19   See, RJN, Exhibit "5."  On or about April 20, 2017, the U.S. Marshal levied upon the

20   personal property of Judgment Debtors in accordance with the Order re: Levy[2].  See,

21   Barbour Decl., ¶ 4; Declaration of Karen Troutman[3] ("Troutman Decl.") ¶ 3, Exhibit

22   "1"; Declaration of Edward Testo[4] ("Testo Decl.") ¶ 2, Exhibit "1."  A designation of

23   the items seized by the U.S. Marshal (the "Collected Property") is set forth in

24   Section III, below, as well as attached as Exhibit "1" to the previously filed Notice of

25

26   [2] A true and correct listing of the personal property collected by the United States Marshal ("Collected Property") is
     attached as Exhibit "1" to the Notice of Levy, filed with the Court on or about June 8, 2017 as Document Number 29.

27   [3] The Declaration of Karen Troutman, and the exhibits thereto, were filed with this Court on or about June 8, 2017, as
     Document Number 31.

28   [4] The Declaration of Edward Testo, and the exhibits thereto, were filed with this Court on or about June 8, 2017, as
     Document Number 32.

-2-

ASSAYAG ✦
MAUSS                                                        INVENTORY AND VERIFICATION OF ITEMS SEIZED

1   Levy.  [Document Number 29, Exhibit "1."]   Wells Fargo is currently holding the
2   personal property of Judgment Debtors as the Court-ordered substitute custodian, and,
3   on June 8, 2017, filed a Motion for Order re: Sale of Personal Property of Judgment
4   Debtors ("Motion re: Sale").  [Document Numbers 28-33].   Moreover, Wells Fargo
5   provided notice of the Motion re: Sale to those parties previously identified by Mr.
6   Moore as alleged interest-holders in the personal property. Id.

7

8   ## II.   EVIDENCE OF OWNERSHIP BY JUDGMENT DEBTORS.

9           As a threshold matter, Mr. Moore has taken inconsistent positions from
10  case to case in respect of the ownership interest he has in the Authorized Items and the
11  Collected Property.  Mr. Moore recently stated, "I am not the owner to the majority of
12  the subject property[...]."  See, Motion for Sanctions Pursuant to FRCP Rule 11
13  [Document Number 21] ("Rule 11 Motion"), page 16, lines 26-27.   However, Mr.
14  Moore's statements disclaiming ownership of the Authorized Items and the Collected
15  Property are conclusively contradictory to previous statements he has made in other
16  court proceedings concerning the personal property at issue.

17          First, Mr. Moore recently represented that he owned the Authorized Items
18  and the Collected Property when he filed a Motion for Order to Inspect, Itemize and
19  Collect Plaintiff's Personal Property in the Los Angeles County Superior Court
20  ("Motion to Inspect") wherein Mr. Moore, in making a request to collect the Authorized
21  Items and Collected Property, continually stated that he needed "his property" back,
22  which was located at the Residence.  See, RJN, Exhibit "14."  Mr. Moore further
23  represented in the Motion to Inspect that "[a]ll this property has been determined to be
24  Mr. Moore's by both a jury and Judge Rosenblatt and the California court of Appeals
25  Second District."  Id. at p. 6.  Therefore, according to Mr. Moore's Motion to Inspect,
26  as of May 18, 2016, the Authorized Items and the Collected Property were owned by
27  Mr. Moore.

28

ASSAYAG ❖
MAUSS

1   Second, Mr. Moore represented in his Chapter 11 bankruptcy petition, filed
2   on or about October 26, 2016, that the Authorized Items and the Collected Property,
3   which included "my music production and broadcast studio, and all my equipment
4   possessions [he] acquired over [his] lifetime" and which were located at the Residence,
5   were assets of Mr. Moore's personal bankruptcy estate. See, RJN, Exhibit "12," page
6   12, lines 4-6[5]. Mr. Moore further stated, in his Chapter 11 bankruptcy petition, that "I
7   have been without my studio and professional property since 2012" in referencing the
8   musical equipment and personal property located at the real property located at 6150
9   Shenandoah Avenue, Los Angeles, California 90056 (the "Residence"). Id. at page 12,
10  lines 24-26. Therefore, according to Mr. Moore's own bankruptcy filings, as of
11  October 26, 2017, the Authorized Items and the Collected Property were owned by Mr.
12  Moore.

13  Third, Mr. Moore recently provided this Court with evidence that he is the
14  true owner of the Authorized Items and the Collected Property. In Mr. Moore's recent
15  Rule 11 Motion, Mr. Moore himself attached a 2013 Order from the Los Angeles
16  County Superior Court, conclusively evidencing that the Authorized Items and the
17  Collected Property are owned by Mr. Moore. See, Rule 11 Motion [Document Number
18  21], pages 21-26. As such, and according to the 2013 Order provided by Mr. Moore,
19  the Authorized Items and the Collected Property have been owned by Mr. Moore since
20  he was evicted from the Residence in 2012.

21  Fourth, Mr. Moore has a storied litigation history with his former domestic
22  partner, Ms. Barbour. Ms. Barbour is the owner of the Residence. See, Barbour
23  Decl., ¶ 1. Ms. Barbour currently resides at the Residence and has resided and been in
24  continuous possession of the Residence, since 2002. See, Barbour Decl., ¶ 2. Mr.
25  Moore resided with Ms. Barbour at the Residence from 2002 to 2010. See, Barbour

26

27  [5] Mr. Moore's Chapter 11 bankruptcy case was dismissed by the United States Bankruptcy Court on December 13, 2016.
    Wells Fargo respectfully requests that the Court review the Bankruptcy Court's opinion in connection with the dismissal of
28  Mr. Moore's Chapter 11 bankruptcy case as its contents are noteworthy with respect to Mr. Moore's penchant for litigation
    aimed at the frustration of the judicial process. See, RJN, Exhibit "13."

-4-

1   Decl., ¶ 3.  The Authorized Items and the Collected Property have been located and

2   stored at the Residence since at least 2011.  See, Barbour Decl., ¶ 5.  Pursuant to the

3   personal knowledge of Ms. Barbour, which is based upon her history with Mr. Moore,

4   and her continuous possession of the Residence for over fifteen years, all of the

5   Collected Property levied and seized on April 20, 2017, was owned by Judgment

6   Debtors.  See, Barbour Decl., ¶¶ 4, 6.

7          Finally, there is a pending adversary proceeding in the United States

8   Bankruptcy Court between Mr. Moore and Ms. Barbour as Adversary Case Number

9   2:16-ap-01543-BR.  In Mr. Moore's Adversary Complaint against Ms. Barbour, he

10  describes, in detail, his ownership interest in much of the Authorized Items and the

11  Collected Property, as follows:

13      62. Consistent with the evidence provided at trial, the debtor [Ms.
         Barbour] holds and control the creditor Ivan Rene Moore's personal
14       business and family properties referenced below:

16      SSL Solid State Recording Console (K) Series valued over
         $450,000.00;Tape recorders; analog and Sony digital 3348 HR, 80
17       Channel Pro tools system; rare and vintage microphone collections
         valued over $350,000,00; lOOk of various software, $225k of touring
18       equipment, cash of over 250k; Classic Guitars Fender and Gibson and
         fender; Kramer Music man Basses; most every keyboard and
19       synthesizer; 6 Fender Rhodes keyboards; 3 Wurlitzer keyboard;
         Hammond b-3 organ 2 Leslie speakers, 35mm film cameras w lenses;
20       (16) Neve Eq,; all of my clothes and jewelry, complete home
21       furnishings, paintings; (9) Rolex men's watches (6) Rolex, Paiget,
         Hamilton female watches that belong to my mother (now deceased),
22       my deceased mother and father's jewelry, loose diamonds, (18) Gold
23       Bars, female (5) Carat pair shape diamond ring that belonged to my
         now deceased mother; family bearer bonds; family Pictures, family
24       birth certificates, Silver wear, China, Crystal, legal documents, deed
25       to properties in other states, complete set of California Practices
         Guides law book, legal court documents for all of my cases past and
26       present, court transcripts, radio stations clients files, Los Angeles
27       Philharmonic 150 page complete orchestration score of the song

28

-5-

1    Somewhere Far Away written by Rene Moore and Jo Westmoreland
2    performed by Rene Moore with Zubin Mehta conducting; written
3    music and string orchestrations of over 350 recorded songs, work
     tapes and documentation for over 750 songs, master recordings,
4    unreleased films purchased by the judgment creditor, (25) video
5    footage of artists sign to label and final masters, film footage, master
     recording and work tapes of Michael Jackson, Janet Jackson,
6    Madonna, En Vogue, Rickey Martin, Isley Brothers, Shaquille
7    O'Neal, Maxie Priest, Ivy Lies, Rene & Angela, Notorious Big, Jay-Z
     certificate of deposits, 25 movie footage sound effect library, (2)
8    motorcycles, racing car parts, (3) Mikes racing transmissions 3 power
9    glide, (4 )Turbo 400 transmission, 600 cubic (5) Chevy racing
     engines, (5) set of big Chief big block racing heads,(6) continental
10   racing converters, Hitoque big block starters, (5) Pro tool systems HD
11   and many others items missing. <u>See</u>, RJN, Exhibit "15," page 20.

12      Mr. Moore will no doubt attempt to claim, once again, that the Authorized

13 Items and the Collected Property belong to others.  However, based upon the foregoing

14 evidence, Mr. Moore should be estopped from doing so.  As indicated above, Mr.

15 Moore has filed pleadings in several state and federal courts demonstrating that he is the

16 owner of the subject personal property.  Mr. Moore cannot, once again, take an

17 inconsistent position with respect to his ownership interest in the Authorized Items and

18 the Collected Property.  It is simply unjust for Mr. Moore to, on the one hand, disclaim

19 any ownership interest whatsoever in the Authorized Items and the Collected Property,

20 while at same time filing signed pleadings in other courts in pursuit of rights and

21 remedies based upon his ownership interest in the Authorized Items and the Collected

22 Property[6].  As such, Wells Fargo submits to this Court that it has met its burden of

23 proof, through declarations, judicially noticeable documents, as well as the admissions

24

25

26

27 [6] This is not the first instance in which Mr. Moore has been caught by a Court making inconsistent admissions with respect
to the ownership of property.  The Los Angeles County Superior Court made a similar finding in its Statement of Decision
28 wherein it described that Mr. Moore "completely reversed" his assertion concerning his ownership interest in a piece of
real property. <u>See</u>, RJN, Exhibit "16" pages 19-21.

-6-

1    of Mr. Moore himself, in proving that the Authorized Items and the Collected Property

2    are owned by Judgment Debtors.

3

4    **III.    INVENTORY AND VERIFICATION OF SEIZED ITEMS.**

5              A true and correct identification and designation of the Collected Property

6    is attached as Exhibit "1" to the Notice of Levy [Document Number 29]. Wells Fargo

7    has reviewed the Collected Property and confirmed that all of the personal property

8    collected is personal property of the Judgment Debtors and, further, was an Authorized

9    Item of personal property listed for seizure in the Order re: Levy. See, Barbour

10   Decl., ¶¶ 4-6. Wells Fargo hereby submits the following inventory of the Collected

11   Property which further identifies and references the specific item identified in the

12   Authorized Items.

13

| Qty. | STUDIO EQUIPMENT INVENTORY | REFERENCE |
|---|---|---|
| lot | 80-channel analog mixing console, "SSL", mdl. 9080, with: | RJN, Ex. 5, pp. 1 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | (approx. 15 boxes) miscellaneous cables and parts | RJN, Ex. 5, pp. 1 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | (2) large boxes SSL cables | RJN, Ex. 5, pp. 1 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | pile of miscellaneous SSL cables | RJN, Ex. 5, pp. 1 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | SSL tower consisting of: | RJN, Ex. 5, pp. 1 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | (5) SOLID STATE LOGIC SSL K-Series power modules | RJN, Ex. 5, pp. 1 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | (1) power conditioner and light module, mdl. PL-8 | RJN, Ex. 5, pp. 1 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | (1) SOLID STATE LOGIC mdl. SL961 console power station module | RJN, Ex. 5, pp. 1 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | (1) TEKTRONIX NTSC generator, mdl. SPG-170A | RJN, Ex. 5, pp. 1 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| lot | gig box with: | RJN, Ex. 5, pp. 3, 5 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | (1) FURMAN power conditioner, Merit Series M-8L | RJN, Ex. 5, pp. 3 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |

-7-

| | | | |
|---|---|---|---|
| | | (1) DIGIDESIGN 888 I/O 24 audio interface | RJN, Ex. 5, pp. 5 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | | (1) power strip | RJN, Ex. 5, pp. 5 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | | (1) keyboard | RJN, Ex. 5, pp. 5 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | | miscellaneous cables | RJN, Ex. 5, pp. 5 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | lot | gig box with: | RJN, Ex. 5, pp. 5 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | | (1) TASCAM CD-401MK II professional CD player | RJN, Ex. 5, pp. 2 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | | (1) PROTEUS/2 Orchestral EMU Systems expander module | RJN, Ex. 5, pp. 4 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | | (2) FURMAN TX-3 turntables, 2/3-way crossover bandpass filter | RJN, Ex. 5, pp. 3 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | | (2) BOSS CE-300 Super Chorus pedals | RJN, Ex. 5, pp. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | | (1) CROWN D150A power amp | RJN, Ex. 5, pp. 4 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | | (2) BGW 7500 Proline II power amps | RJN, Ex. 5, pp. 5 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | | (1) CROWN PS-200 power amp | RJN, Ex. 5, pp. 5 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | | (1) Effectron ADM 1024 digital delay unit | RJN, Ex. 5, pp. 4 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | | (1) TECHNICS M85 tape player | RJN, Ex. 5, pp. 4 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | 2 | STUDIO MASTER 8-into-4 mixers | RJN, Ex. 5, pp. 5 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | 1 | OTARI MX5050 reel-to-reel tape recorder | RJN, Ex. 5, pp. 5 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | 1 | ROLAND D-70 Super LA synthesizer (some frozen keys) | RJN, Ex. 5, pp. 3 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | 1 | NOVATRON Remote 61SL keyboard | RJN, Ex. 5, pp. 3 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | 1 | RHODES Seventy Three keyboard (poor condition - frozen keys) | RJN, Ex. 5, pp. 2 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | lot | (box 120) new miscellaneous cables | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |

-8-

| | lot | roller rack, wood, with: | |
|---|---|---|---|
| | | (1) FURMAN TX3 turntable 2/3-way crossover bandpass filter | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | | (1) Midi Timepiece MTP AV | RJN, Ex. 5, pp. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | | (1) KORG OIR/W music workstation | RJN, Ex. 5, pp. 3 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | | (1) ROLAND linear synthesizer | RJN, Ex. 5, pp. 3 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | | (1) PANASONIC DAT recorder, mdl. SV-3800 | RJN, Ex. 5, pp. 4 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | | (1) MEDEA uninterruptible power supply | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | | (1) ROLAND digital piano, mdl. MKS-20 | RJN, Ex. 5, pp. 3 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | | (1) DYNATEK disc drive | RJN, Ex. 5, pp. 4 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | | (1) SOLID STATE LOGIC disc drive | RJN, Ex. 5, pp.1, 2 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | | (lot) miscellaneous cables | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | | | |
| | lot | roller rack, wood, with: | |
| | | (2) FURMAN PL8 power conditioners | RJN, Ex. 5, pp.3 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | | (1) DBX Professional 900 Series outboard rack module | RJN, Ex. 5, pp.5 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | | (1) UREI 6500 power amp | RJN, Ex. 5, pp.5 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | | (15) patch bays | RJN, Ex. 5, pp.4 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | | | |
| | 1 | YAMAHA grand piano, mdl. C7, white | RJN, Ex. 5, pp.1 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | | | |
| | lot | consisting of: | |
| | | (1) bass drum | RJN, Ex. 5, pp.3 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | | (1) snare drum | RJN, Ex. 5, pp.3 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | | (1) cymbal | RJN, Ex. 5, pp.3 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | | miscellaneous boom stands | RJN, Ex. 5, pp.3 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | lot | roller rack, wood, with: | |

-9-

| | | | |
|---|---|---|---|
| 1 | | (2) OMS Studio 5LX Opcode Systems midi interface | RJN, Ex. 5, pp.4 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 2 | | (1) ROLAND SDE-3000A digital delay | RJN, Ex. 5, pp.5 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 3 | | (1) TASCAM 122MKII tape player | RJN, Ex. 5, pp.5 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 4 | | (1) ROLAND MKS-20 digital piano | RJN, Ex. 5, pp.3 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 5 | | (2) TIMELINE Lynx time code modules | RJN, Ex. 5, pp.4 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 6 | | (1) HHB Burn-It Plus CD burner | RJN, Ex. 5, pp. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 7 | | (1) BRAINSTORM SR26 dual time code distributor | RJN, Ex. 5, pp.4 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 8 | | (1) MIDI time piece, 128-channels | RJN, Ex. 5, pp. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 9 | | (1) ROLAND Super JD/JD-990 synthesizer module | RJN, Ex. 5, pp.3 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 10 | | (1) BILTREE patch bay | RJN, Ex. 5, pp.4 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 11 | | (1) LEXICON PCM70 digital effects processor | RJN, Ex. 5, pp.5 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 12 | | (1) ELTEKON disc drive | RJN, Ex. 5, pp.4 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 13 | | (1) S760 drive | RJN, Ex. 5, pp.4 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 14 | | (1) MONSTER Power AVS2000 Pro voltage stabilizer | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 15 | | | |
| 16 | 2 | MCI reel-to-reel 24-track recorder | RJN, Ex. 5, pp.5 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 17 | | | |
| 18 | 1 | MCI Autolocator II controller | RJN, Ex. 5, pp.5 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 19 | | | |
| 20 | 2 | WESTLAKE AUDIO speakers (middle horn deteriorated) | RJN, Ex. 5, pp.2 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 21 | | | |
| 22 | lot | (14) sound catchers | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 23 | | | |
| 24 | 2 | EVENT Precision 8 studio monitors | RJN, Ex. 5, pp.4 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 25 | | | |
| 26 | 1 | MACKIE HRS150 sub-woofer | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 27 | | | |
| 28 | | | |

-10-

INVENTORY AND VERIFICATION OF ITEMS SEIZED

| | | | |
|---|---|---|---|
| 4 | ELECTROCOMPANIET Ampliwire 180 monoclass A power amplifiers | RJN, Ex. 5, pp.5 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 2 | YAMAHA table top speakers | RJN, Ex. 5, pp.2 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 2 | WESTLAKE AUDIO speakers (middle horn deteriorated) | RJN, Ex. 5, pp.2 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 1 | SONY Dash 48 reel-to-reel tape recorder with digital audio recorder/remote control unit RM-3348 | RJN, Ex. 5, pp. 5 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 1 | SONY Dash 48 Plus 48HR reel-to-reel tape recorder with digital audio recorder/remote control unit, RM-3348HR | RJN, Ex. 5, pp. 5 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 1 | DISC MAKERS Reflex Pro7 CD duplicator | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 1 | TECHNICS SL-1200MK2 turntable | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 3 | boxes miscellaneous used cords and cabling | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 1 | fog machine (labeled broken) | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 1 | SONY mdl. Trinitron monitor | RJN, Ex. 5, pp.1 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 1 | BROTHER laser printer | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 1 | ZENITH VCR | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 2 | WESTLAKE AUDIO speakers, large (poor condition) | RJN, Ex. 5, pp.2 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| lot | box with computer, speakers, keyboard and printer | RJN, Ex. 5, pp.1 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 1 | DBX 234/234XL crossover | RJN, Ex. 5, pp.5 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |

-11-

ASSAYAG ❖
MAUSS

| | | |
|---|---|---|
| 1 | PHILIPS VCR | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 1 | Moto DTP | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 1 | RADIO SHACK 4-channel stereo microphone mixer | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 1 | SONY DMU-3048 digital meter unit | RJN, Ex. 5, pp. 5 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 1 | SONY AC-MC800G AC power supply unit | RJN, Ex. 5, pp. 2 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| lot | box of old telephones | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 1 | RCA DVD player | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 1 | SONY PCM-R300 high density linear A/D - D/A converter | RJN, Ex. 5, pp.2 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 1 | BOSS guitar tuner | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 1 | TMC digital soldering station | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 1 | KALATEL Caliber RSM1600 remote surveillance module | RJN, Ex. 5, p. 6; Barbour Decl. ¶¶4-6. |
| 1 | drum kick pedal | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 3 | foot pedals | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 2 | AKG C535EB microphones | RJN, Ex. 5, p.2 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 1 | BEYER DYNAMIC M69N microphone | RJN, Ex. 5, pp.4 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |

-12-

| | 1 | AVLEX DV67 microphone | RJN, Ex. 5, pp.2 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | 1 | SHURE SM58 microphone | RJN, Ex. 5, pp.2 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | 1 | SHURE Unidyne III SM57 microphone | RJN, Ex. 5, pp.2 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | 1 | SHURE Dynamic SM57 microphone | RJN, Ex. 5, pp.2 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | 3 | SA40 adapters | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | 2 | CAD DI89 microphones | RJN, Ex. 5,p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | 1 | SHURE KSM27 microphone | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | lot | case with: | |
| | | (1) SONY C-800 condenser microphone | RJN, Ex. 5, pp.2 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | | (1) CANON T70 camera | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | | (1) NIKON N90S camera | RJN, Ex. 5, p. 6; Ex. 15; Barbour Decl. ¶¶4-6. |
| | | (1) TAMRON mdl. 1760 lens | RJN, Ex. 5, pp. 6; Ex. 15; Barbour Decl. ¶¶4-6. |
| | | (1) NIKON Speedlight SB-28 flash | RJN, Ex. 5, pp. 6; Ex. 15; Barbour Decl. ¶¶4-6. |
| | | (1) VIVITAR AutoThyristar 2600D flash | RJN, Ex. 5, p. 6; Ex. 15; Barbour Decl. ¶¶4-6. |
| | 1 | plastic organizer with 4-drawers | RJN, Ex. 5, p. 6; Barbour Decl. ¶¶4-6. |
| | 1 | BISLEY green rolling metal tool box with miscellaneous tools and parts | RJN, Ex. 5, p. 6; Barbour Decl. ¶¶4-6. |
| | 1 | digital claptrap clap machine | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |

-13-

| | | | |
|---|---|---|---|
| 1 | TRUE 1x4 midi thru box | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 1 | REALISTIC sound level meter | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 1 | ST500 guitar tuner | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 1 | SM-1A passive direct box | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 1 | BOSS TU-100 chromatic tuner | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 1 | TECHNICS 2-channel box | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 1 | BOSS FS-5u pedal | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 1 | guitar pedal | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 2 | boxes miscellaneous circuit boards/cards | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 2 | keyboards | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| lot | computer speakers | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 1 | FOG  system with Anvil case | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 2 | miscellaneous computer cords | RJN, Ex. 5, p. 6; Barbour Decl. ¶¶4-6. |
| 1 | bin miscellaneous telephone parts | RJN, Ex. 5, p. 6; Barbour Decl. ¶¶4-6. |
| 1 | drum seat - no base | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 1 | BROTHER labeler | RJN, Ex. 5, p. 6; Barbour Decl. |

-14-

INVENTORY AND VERIFICATION OF ITEMS SEIZED

| | | | |
|---|---|---|---|
| 1 | | | ¶¶4-6. |
| 2 | 1 | calculator | RJN, Ex. 5, p. 6; Barbour Decl. ¶¶4-6. |
| 3 | | | |
| 4 | lot | (6) power strips | RJN, Ex. 5, p. 6; Barbour Decl. ¶¶4-6. |
| 5 | | | |
| 6 | lot | box of manuals | RJN, Ex. 5, p. 6; Barbour Decl. ¶¶4-6. |
| 7 | | | |
| 8 | 3 | APPLE MAC computers | RJN, Ex. 5, pp.1 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 9 | | | |
| 10 | lot | (11) framed awards/plaques | RJN, Ex. 5, p. 6; Barbour Decl. ¶¶4-6. |
| 11 | | | |
| 12 | lot | (2) large bins of miscellaneous wiring, cables, cords, power strips | RJN, Ex. 5, p. 6; Barbour Decl. ¶¶4-6. |
| 13 | | | |
| 14 | 1 | EPSON printer | RJN, Ex. 5, p. 6; Barbour Decl. ¶¶4-6. |
| 15 | | | |
| 16 | 1 | old personal computer | RJN, Ex. 5, pp.1 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 17 | 1 | PANASONIC SV3800 DAT recorder | RJN, Ex. 5, pp.4 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 18 | | | |
| 19 | 3 | external hard drives | RJN, Ex. 5, pp.5 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 20 | | | |
| 21 | lot | box miscellaneous cables | RJN, Ex. 5, p. 6; Barbour Decl. ¶¶4-6. |
| 22 | | | |
| 23 | lot | box (3) personal computer monitors | RJN, Ex. 5, pp.1 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 24 | 1 | HONDA motorcycle, mdl. CBR1000F, year 1988, vin#1HESC211XJA100658, no license plate, farings are off the motorcle but present and in poor condition, rear brakes are bound (poor condition - non-operable) | RJN, Ex. 5, pp.1 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 25 | | | |
| 26 | | | |
| 27 | | BOX #1 | |
| 28 | | - personal and legal papers | RJN, Ex. 5, p. 6; Barbour Decl. |

-15-

INVENTORY AND VERIFICATION OF ITEMS SEIZED

| | | |
|---|---|---|
| | | ¶¶4-6. |
| | | |
| | **BOX #2** | |
| | (4) DVD studio clips & effects | RJN, Ex. 5, p. 6; Barbour Decl. ¶¶4-6. |
| | (3) BETA CAM tapes, various artists | |
| | (3) #64 SONY digital Betacam tapes  - no markings | RJN, Ex. 5, pp.2 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | (1) 4" floppy | RJN, Ex. 5, p. 6; Barbour Decl. ¶¶4-6. |
| | (4) DAT cassettes | RJN, Ex. 5, pp.2 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | (2) cassette tapes | RJN, Ex. 5, p. 6; Barbour Decl. ¶¶4-6. |
| | (13) DVD studio sessions | RJN, Ex. 5, p. 6; Barbour Decl. ¶¶4-6. |
| | | |
| | **BOX #3** | |
| | - miscellaneous personal paperwork, mail, etc. | RJN, Ex. 5, p. 6; Barbour Decl. ¶¶4-6. |
| | | |
| | **BOX #4** | |
| | Box of Masters consisting of: | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | - blank master | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | - Rene Rufftown master | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | - Lew Mac Rufftown master | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | - Black Chill - The Kush master | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | - Amanda master | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | - Amanda Rufftown master | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | - Black Chill master | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | - Rene Street Songs master | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | - Rene master | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | - Rene Street Songs master | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | - Rene Street Songs master | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | | |

-16-

ASSAYAG ❖ MAUSS

| BOX #5 | |
|---|---|
| (47) in-studio CD sessions | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| (5) unused DAT tapes | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| Spindles of in-studio CD sessions: | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| (1) w/110 | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| (2) w/110 | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| (3) w/110 | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| (1) w/45 | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| (1) w/20 | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | |
| BOX #6 | |
| (52)  cassette tapes made in-studio/various titles | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| (11) VHS tapes - various in-studio sessions | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | |
| BOX #7 | |
| (25) DAT tapes - various sessions | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| (22) 4" floppy disks - no markings | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | |
| BOX #8 | |
| (39) DAT tapes - miscellaneous in-studio sessions | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | |
| BOX #9 | |
| - 1 bin of (23) sound tracks software for recording | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| BOX #10 | |
| (37) cables, electrical adapters | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| (1) 3" electric fan | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| (2) iPhone chargers | RJN, Ex. 5, p. 6; Barbour Decl. ¶¶4-6. |
| | |
| BOX #11 | |

-17-

ASSAYAG ❖
MAUSS

| | |
|---|---|
| (29) commercially released CD's - various artists | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | |
| **BOX #12** | |
| (22) blank CD's | RJN, Ex. 5, p. 6; Barbour Decl. ¶¶4-6. |
| | |
| **BOX #13** | |
| (5) large digital audio master tapes - labeled miscellaneous artists | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| (1) BELINDA LEWIS large digital audio tape | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| (1) HIPNOTIE LOVE master tape | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| (1) blank tape reel | RJN, Ex. 5, p. 6; Barbour Decl. ¶¶4-6. |
| | |
| **BOX #14** | |
| Box software consisting of: | RJN, Ex. 5, pp. 2 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| (1) PRO DRUM sample software, "BATTERY 2" | RJN, Ex. 5, pp. 2 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| (1) PRO TOOLS Version 4.2 floppy disc | RJN, Ex. 5, pp. 2 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| (1) ELAB IGNITION virtual instrument series software | RJN, Ex. 5, pp. 2 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| (1) APPLE LOGIC studio software | RJN, Ex. 5, pp. 2 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| (1) WIZOO/VST INSTRUMENTS virtual guitarist software | RJN, Ex. 5, pp. 2 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| (1) MOTU BPM BEAT Production Machine software | RJN, Ex. 5, pp. 2 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| (1) WAVES RENAISSANCE MAXX NATIVE software | RJN, Ex. 5, pp. 2 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| (1) APPLE MAC OSX TIGER software | RJN, Ex. 5, pp. 2 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| (1) MOTU Electric Keys software | RJN, Ex. 5, pp. 2 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| (1) EMAGIC LOGIC PRO6 Upgrade A software | RJN, Ex. 5, pp. 2 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| (1) BFD Premium Acoustic Drum module | RJN, Ex. 5, pp. 2 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| (1) VINTAGE LINE Pro 53 software | RJN, Ex. 5, pp. 2 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| (1) ROLAND Expansion board SRX Series SRX08 - Platinum Trax | RJN, Ex. 5, pp. 2 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |

-18-

| | | |
|---|---|---|
| | **BOX #15** | |
| | - VIRTUAL GUITAR Electric Edition (Steinberg) - software | RJN, Ex. 5, pp. 2 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | - EMAGIC VINTAGE Collection EVB3, EVDC, EVP88 - software | RJN, Ex. 5, pp. 2 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | | |
| | **BOX #16** | |
| | VHS Tapes - RUFFTOWN/MAYBACH/LIGHTNING MEDIA/RYKO DISTRIBUTION consisting of: | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | (25) Adina Howard VHS Tapes | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | - The Second Coming, Misc. 30-second spots | |
| | (2) CD's - SYLK-E FYNE RUFFTOWN ENT. SNOOP DOGG, BILLY BOY, JT MONEY, LUKEE & NICOLE RENEE | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | (7) Adina Howard CD's | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | (3) Rene CD's - Rufftown | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | | |
| | **BOX #17** | |
| | (12) AMBIENCE sound effects CD's 3001-3012 | RJN, Ex. 5, pp. 5 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | (5) WARNER BROS. sound effects library WB01-WB05 | RJN, Ex. 5, pp. 5 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | (5) SOUND IDERS sound effects library 4001-4005 | RJN, Ex. 5, pp. 5 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | (28) SOUND IDES sound effects library 1001-1028 | RJN, Ex. 5, pp. 5 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | (4) SOUND IDES sound effects library 2007, 2010, 2012, 2013 | RJN, Ex. 5, pp. 5 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | (3) FUN WITH SOUND EFFECTS | RJN, Ex. 5, pp. 5 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | (1) SOUNDS OF FASCINATING ANIMAL WORLD | RJN, Ex. 5, pp. 5 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | (2) recordable CD's | RJN, Ex. 5, pp. 5 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | (6) LUCAS FILM sound effects library LF01-LF06 | RJN, Ex. 5, pp. 5 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | (5) UNIVERSAL STUDIOS effects library US01-US05 | RJN, Ex. 5, pp. 5 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | (1) TDK VHS tape | RJN, Ex. 5, pp. 5 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | | |
| | **BOX #18** | |

-19-

| | | |
|---|---|---|
| | (6) picture reels | RJN, Ex. 5, p. 6; Barbour Decl. ¶¶4-6. |
| | | |
| | **BOX #19** | |
| | tape reel masters consisting of: | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | - RENE STREET SONGS master | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | - AMANDA master | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | - AMANDA master | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | - RENE & ANGELA master | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | - blank master | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | - RENE STREET SONGS master | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | - RENE & ANGELA master | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | - unmarked master | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | - miscellaneous artist master | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | (2)blank master tapes | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | (4) SYLK-E FYNE records | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | - SILK-E FYNE master | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | | |
| | **BOX #20** | |
| | Software consisting of: | |
| | (1) FINAL CUT Pro4 - APPLE | RJN, Ex. 5, pp. 5 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | (1) LOGIC PRO 7 - APPLE | RJN, Ex. 5, pp. 5 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | (1) BFD Drum Module XFL | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | | |
| | **BOX #21** | |
| | DESTINY'S CHILD TAPES - (23) black box - DM60 tapes | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | | |
| 2 | filing cabinets, 4-drawer, metal, vertical with personal paperwork and files | RJN, Ex. 5, p. 6; Barbour Decl. ¶¶4-6. |

-20-

| | | |
|---|---|---|
| **BOX #22** | | |
| (1) 2004 MOTION (APPLE) - unopened | RJN, Ex. 5, pp. 5 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. | |
| - Real Time Graphic Design (MAC G5 G4 with card) | RJN, Ex. 5, pp. 5 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. | |
| (1) 2007 HD final cut studio 2 (MAC) - unopened | RJN, Ex. 5, pp. 5 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. | |
| (1) 2005 Shake 4 (MAC/APPLE) - unopened | RJN, Ex. 5, pp. 5 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. | |
| - Advanced Digital Compositing | RJN, Ex. 5, pp. 5 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. | |
| | | |
| **BOX #23** | | |
| (14) film reels/KODAK film reels | RJN, Ex. 5, pp. 5 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. | |
| | | |
| **BOX #24** | | |
| box of masters consisting of: | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. | |
| - VJ TV master | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. | |
| - (2) RUFFTOWN SYLK-E FYNE featuring SNOOP DOG & BIZZY DOVE master | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. | |
| - HIP HOP NATION master/MY BOY EDDIE | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. | |
| - GROOVE PALLER master | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. | |
| - DISIFER master | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. | |
| - NECFC DFF in FLORIDA master | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. | |
| - (3) YA STYLE RUFFTOWN masters | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. | |
| - RUFFTOWN SYLK-E FYNE master | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. | |
| - WILL POWER master | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. | |
| - IN THE MIX PEEP SHOW master | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. | |
| - LUKEE master reel | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. | |
| | | |
| **BOX #25** | | |
| (240) ADAM LAMBERT CD's - shrink-wrapped | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. | |
| | | |

-21-

| | |
|---|---|
| **BOX #26** | |
| (240) ADAM LAMBERT CD's | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | |
| **BOX #27** | |
| (250) ADAM LAMBERT CD's - shrink-wrapped | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | |
| **BOX #28** | |
| (1) flexible disk cartridge | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| (3) white box music reels | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| (1) sound recording tape | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| (1) music reel - POLY GRAM | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| (1) music reel - RENE & ANGELA | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| (1) FIRST LOVE master reel | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| (1) STREET CALLED - master reel | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| (1) master reel - RENE & ANGELA | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | |
| **BOX #29** | |
| (250) ADAM LAMBERT CD's | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | |
| **BOX #30** | |
| (1) case floppy discs | RJN, Ex. 5, p. 6; Barbour Decl. ¶¶4-6. |
| (1) MINIMOOG V - ARTURIA | RJN, Ex. 5, pp. 3 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| (1) bag mic parts | RJN, Ex. 5, p. 6; Barbour Decl. ¶¶4-6. |
| (1) DAT digital audio tape | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| (1) STYLUS vinyl groove module | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| (1) ATMOSPHERE - dream synth module | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| (1) TRILOGY - total bass module | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | |
| **BOX #31** | |

-22-

| | software consisting of: | |
|---|---|---|
| | (1) PRO TOOLS - Digi Rack Plug-Ins | RJN, Ex. 5, pp. 1 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | (1) AUTO-TUNE 4 set | RJN, Ex. 5, pp. 1 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | (1) WASP bar code fontware | RJN, Ex. 5, pp. 1 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | (1) PRO TOOLS - HD8 book set | RJN, Ex. 5, pp. 1 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | (1) PRO TOOLS books | RJN, Ex. 5, pp. 1 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | (1) JUPITER-8V - ARTURIA | RJN, Ex. 5, pp. 1 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | | |
| | BOX #32 | |
| | (5) KODAK reels, Vision-2 | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | | |
| | BOX #33 | |
| | (26) miscellaneous CD's | RJN, Ex. 5, p. 6; Barbour Decl. ¶¶4-6. |
| | | |
| | BOX #34 | |
| | software consisting of: | |
| | - LAVA 2000 AD 01 AdV2.0 - Music in Motion | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | - Alpha Dance - Producer Remixer Production Tool | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | - Synclavier sample | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | - Tekno Industrial CD | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | - Adat XT reference manual | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | - CANON Power Shot SD552 owner manual | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | - APPLE software | RJN, Ex. 5, p. 1 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | - A/D converter HDA-1, AIWA | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | - Project II - WINDOWS NT Q4, 1998 (Digidesign) | RJN, Ex. 5, pp. 1 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | - Transfuser (Digidesign) | RJN, Ex. 5, pp. 1 & 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | - VST to Audio unit adapter | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. |

-23-

INVENTORY AND VERIFICATION OF ITEMS SEIZED

| | | |
|---|---|---|
| 1 | | 15; Barbour Decl. ¶¶4-6. |
| 2 | - STRIKE Ultimate Virtual drummer | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 3 | - BFD2 upgrade expansion | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 4 | - Propellerhead (REASON) | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 5 | - Wirelegg Mouse | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 6 | | |
| 7 | BOX #35 | |
| 8 | (4) RENE & ANGELA music reels | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 9 | | |
| 10 | BOX #36 | |
| 11 | ADINA HOWARD 2004 mixed VHS, CD's, DVD's - Second Coming | RJN, Ex. 5, p. 6; Barbour Decl. ¶¶4-6. |
| 12 | | |
| 13 | BOX #37 (11) SYLK-E FYNE film reels | RJN, Ex. 5, p. 6; Barbour Decl. ¶¶4-6. |
| 14 | | |
| 15 | BOX #38 | |
| 16 | (4) GP9 Studio master audio tapes | RJN, Ex. 5, p. 6; Barbour Decl. ¶¶4-6. |
| 17 | (2) Monster Power Pro-7000 (power conditioner) | RJN, Ex. 5, p. 6; Barbour Decl. ¶¶4-6. |
| 18 | | |
| 19 | BOX #39 (240) ADAM LAMBERT CD's - full case | RJN, Ex. 5, p. 6; Barbour Decl. ¶¶4-6. |
| 20 | | |
| 21 | BOX #40 | |
| 22 | (2) miscellaneous random boxes with parts - blue top | RJN, Ex. 5, p. 6; Barbour Decl. ¶¶4-6. |
| 23 | (1) wood-looking speaker part | RJN, Ex. 5, p. 6; Barbour Decl. ¶¶4-6. |
| 24 | (3) SONY disc reels | RJN, Ex. 5, p. 6; Barbour Decl. ¶¶4-6. |
| 25 | (1) black box with (15) miscellaneous CD's & (8) floppy discs | RJN, Ex. 5, p. 6; Barbour Decl. ¶¶4-6. |
| 26 | (1) wireless video receiver | RJN, Ex. 5, p. 6; Barbour Decl. ¶¶4-6. |
| 27 | (1) tape wrapped in foil - Bruce Swedien | RJN, Ex. 5, p. 6; Barbour Decl. ¶¶4-6. |
| 28 | | |

-24-

| | | |
|---|---|---|
| 1 | (1) REALISTIC cassette player | RJN, Ex. 5, p. 6; Barbour Decl. ¶¶4-6. |
| 2 | (1) MRL - Calibration tape | RJN, Ex. 5, p. 6; Barbour Decl. ¶¶4-6. |
| 3 | (7) miscellaneous reels | RJN, Ex. 5, p. 6; Barbour Decl. ¶¶4-6. |
| 4 | | |
| 5 | (1) VHS tape | RJN, Ex. 5, p. 6; Barbour Decl. ¶¶4-6. |
| 6 | (1) SONY Magnet-Optical disc | RJN, Ex. 5, p. 6; Barbour Decl. ¶¶4-6. |
| 7 | (41) miscellaneous CD's | RJN, Ex. 5, p. 6; Barbour Decl. ¶¶4-6. |
| 8 | | |
| 9 | **BOX #41** | |
| | (66) miscellaneous floppy discs | RJN, Ex. 5, p. 6; Barbour Decl. ¶¶4-6. |
| 10 | (20) DVC's - digital video cassettes | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 11 | (9) miscellaneous VHS tapes | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 12 | (1) stack of miscellaneous CD's | RJN, Ex. 5, p. 6; Barbour Decl. ¶¶4-6. |
| 13 | (4) GP9 red reels | RJN, Ex. 5, p. 6; Barbour Decl. ¶¶4-6. |
| 14 | (1) 996 audio mastering tape - artist - SLAVE MASTER | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 15 | (1) GP9-9 reel - artist - TARYN SCALI | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 16 | (5) GP9 reels - artist - RENE | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 17 | (2) FOTO KEM - film and video reels | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 18 | | |
| 19 | (1) SCOTCH - 250 audio recording tape | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 20 | (1) SONY - dash audio master tape | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 21 | | |
| 22 | **BOX #42** | |
| 23 | SYLK-E FINE - Flyers photos | |
| | (11) blue box master tapes | |
| 24 | (70) black box DA8 tapes | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 25 | (6) miscellaneous CD's | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 26 | (1) VHS cassette | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| 27 | (4) miscellaneous tapes | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. |
| 28 | | |

-25-

| | | |
|---|---|---|
| | | 15; Barbour Decl. ¶¶4-6. |
| | (3) miscellaneous discs | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | (4) KCA - SONY tapes | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | (33) SYLK-E FYNE records | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | | |
| | **BOX #43** | |
| | (81) miscellaneous CD's | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | (2) miscellaneous DVD's | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | | |
| | **BOX #44** | |
| | (1) VIVITAR camera | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | (200) blank CD's | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | (1) VHS tape | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | (200) miscellaneous software CD's | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | (100) miscellaneous software CD's | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | (60) miscellaneous music CD's, various artists | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | | |
| | **BOX #45** | |
| | (6) GP9 blank Quantegy tapes - grand master | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | | |
| | **BOX #46** | |
| | (72) RUFFTOWN - DAT cassettes - SYLK-E FYNE | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | (60) miscellaneous floppy discs | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | (4) cassettes - various artists | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | (3) miscellaneous CD's - various artists | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | (1) PPG Wave 2.V Wavetable for VST | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | (18) miscellaneous VHS tapes | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | | |

-26-

ASSAYAG ❖
MAUSS

| BOX #47 | |
|---|---|
| (47) miscellaneous music CD's - various artists | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| miscellaneous books | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| (60) TDK - IBM formatted discs | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | |
| BOX #48 | |
| (15) miscellaneous cassette tapes - various artists | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| (4) miscellaneous VHS tapes | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| | |
| BOX #49 | |
| Software consisting of: | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| (1) Komplete 6 | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |
| (1) CS-80V | RJN, Ex. 5, p. 6; Ex. 12; Ex. 14; Ex. 15; Barbour Decl. ¶¶4-6. |

Dated:  June 16, 2017

ASSAYAG ❖ MAUSS
A Limited Liability Partnership


By: /s/*Joshua K. Partington*
    JOSHUA K. PARTINGTON
Attorneys for Judgment Creditor,
WELLS FARGO BANK, N.A.

-27-

1

## PROOF OF SERVICE

2

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.
3  My business address is: 2915 Red Hill Avenue, Suite A200, Costa Mesa, CA 92626.

4
A true and correct copy of the foregoing document entitled (specify): **INVENTORY AND**
5  **VERIFICATION OF ITEMS SEIZED PURSUANT TO ORDER RE:
INSTRUCTION TO U.S. MARSHAL TO LEVY UPON PERSONAL PROPERTY**
6  **OF JUDGMENT DEBTORS; MEMORANDUM OF POINTS AND AUTHORITIES**
will be served or was served (a) on the judge in chambers in the form and manner required
7  by LBR 5005-2(d); and (b) in the manner stated below:

8  **1. <u>TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING</u>**
9  **(NEF)**: Pursuant to controlling General Orders and LR, the foregoing document will be
served by the court via NEF and hyperlink to the document. On **June 16, 2017**, I checked
10  the CM/ECF docket for this case and determined that the following persons are on the
11  Electronic Mail Notice List to receive NEF transmission at the email addresses stated
below:

12

13  - **Michele Sabo Assayag:** efilings@amlegalgroup.com
- **Byron B Mauss:** byronm@amlegalgroup.com,efilings@amlegalgroup.com
14  - **Joshua Kenneth Partington:** efilings@amlegalgroup.com
15  - **Andrew K Stefatos:** stefatosandrew@gmail.com

16                    ☐    Service information continued on attached page

17

18  **2. <u>SERVED BY UNITED STATES MAIL</u>**: Pursuant to F.R.Civ.P. 5 and/or controlling
LR, on **June 16, 2017**, I served the following persons and/or entities at the last known
19  addresses in this case by placing a true and correct copy thereof in a sealed envelope in the
United States mail, first class, postage prepaid, and addressed as follows. Listing the judge
20  here constitutes a declaration that mailing to the judge will be completed no later than 24
21  hours after the document is filed.

22  Ivan Rene Moore
23  1236 Redondo Boulevard
Los Angeles, CA 90019
24

25                    ☐    Service information continued on attached page

26

27

28

SSAYAG ❖
MAUSS

**3.   SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served):** Pursuant to F.R.Civ.P. 5 and/or controlling LR, on _____, **2017**, I served the following persons and/or entities by overnight mail service as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐    Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| June 16, 2017 | ISABEL DELGADO | /s/ Isabel Delgado |
|---|---|---|
| Date | Printed Name | Signature |

SSAYAG ❖
MAUSS

# REQUEST FOR JUDICIAL NOTICE

# 6

1
2
3
4
5
6
7
8                      UNITED STATES DISTRICT COURT
9                     CENTRAL DISTRICT OF CALIFORNIA
10
11   IVAN RENE MOORE,                    Case No. 2:17-cv-04828-ODW (GJS)
12            Plaintiff
13        v.                             **JUDGMENT**
14   WELLS FARGO BANK, et al.,
15            Defendant.
16
17        Pursuant to the Court's Order Accepting the Findings and Recommendations
18   of United States Magistrate Judge Gail J. Standish,
19
20        **IT IS ADJUDGED THAT** this case is dismissed in full as follows:
21        (1) the federal claim against Wells Fargo is dismissed with prejudice;
22        (2) all state law claims are dismissed without prejudice; and
23        (3) all claims against the United Marshals Service are dismissed without
24            prejudice.
25
26   DATE: May 17, 2018          _____
27                               OTIS D. WRIGHT II
                                 UNITED STATES DISTRICT JUDGE
28

# REQUEST FOR JUDICIAL NOTICE

# 7

1

2

3

4

5

6

7

8           UNITED STATES DISTRICT COURT

9           CENTRAL DISTRICT OF CALIFORNIA

10

11    IVAN RENE MOORE,                    Case No. 2:17-cv-04828-ODW (GJS)

12             Plaintiff                  **ORDER ACCEPTING FINDINGS
                                          AND RECOMMENDATIONS OF**
13          v.                            **UNITED STATES MAGISTRATE
                                          JUDGE; DECLARING**
14    WELLS FARGO BANK, et al.,           **PLAINTIFF TO BE A
                                          VEXATIOUS LITIGANT; AND**
15             Defendants.                **ENTERING PRE-FILING ORDER**

16

17          Pursuant to 28 U.S.C. § 636, the Court has reviewed the Complaint and all

18    pleadings, motions, and other documents filed in this action; the Report and

19    Recommendation of United States Magistrate Judge [Dkt. 27 ("Report")]; Plaintiff's

      Objections to the Report [Dkt. 28]; Plaintiff's two Requests for Judicial Notice
20
      [Dkts. 29, 30]; the Reply of Defendants Wells Fargo Bank, N.A., Asset Reliance,
21
      Craig Hansen, Edward D. Testo (collectively "Bank Defendants") [Dkt. 31]; Bank
22
      Defendants' Supplemental Request for Judicial Notice [Dkt. 32]; and Bank
23
      Defendants' Motion to Strike Plaintiff's Requests for Judicial Notice [Dkt. 33].
24
      Defendant Gregory Barbour did not file objections or a reply. Pursuant to 28 U.S.C.
25
      § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the Court has conducted a de novo review
26
      of those portions of the Report to which objections have been stated.
27

28

1       Plaintiff's Objections appear to be an attempt to obfuscate the issues relevant

2   to the only matters before the Court, namely, the two Dismissal Motions brought by

3   the Bank Defendants and Defendant Barbour and the Vexatious Litigant Motion

4   brought by the Bank Defendants.  Plaintiff first reiterates his bailment theory,

5   proffered in response to the Dismissal Motions, which constitutes a belated attempt

6   to try out a completely new and inconsistent position with respect to Plaintiff's

7   ownership (or lack thereof) of the personal property at issue in this action.  As the

8   Report correctly concludes, the issue of Plaintiff's ownership of the personal

9   property at issue here already had been resolved against him repeatedly in several

10  prior actions and, thus, is barred from re-litigation in this case by the doctrine of res

11  judicata.  Plaintiff's attempt to avoid the res judicata effect of these prior lawsuits by

12  proffering here factual assertions that directly contradict those he made in the prior

13  lawsuits, not only is ineffective to avoid the res judicata doctrine but raises

14  substantial concerns under Rule 11 of the Federal Rules of Civil Procedure.

15      Plaintiff next objects to the Magistrate Judge's finding that a hearing on the

16  Dismissal Motions and Vexatious Litigant Motion was not necessary [Dkts. 12, 16].

17  The Court finds that the procedure followed was appropriate and consistent with

18  Local Rule 7-15.  If Plaintiff believed a hearing was needed, he could have sought

19  reconsideration from the Magistrate Judge or District Judge, but failed to do so.  His

20  belated complaint is not persuasive.

21      Plaintiff's position that he was "reluctant" or "hesitant" to inform the Court

22  that he had allegedly encountered difficulty serving the U.S. Marshals Service is

23  equally unconvincing.  According to the declaration from the process server,

24  Plaintiff attempted to serve the U.S. Marshals Service on July 12, 2017; just twelve

25  days after the ninety-day deadline began to run under Rule 4(m).  Plaintiff,

26  therefore, had seventy-eight days after the alleged refusal of service by the U.S.

27  Marshals Service to request assistance from the Court or to seek an extension of the

28  Rule 4(m) deadline.  Instead, Plaintiff did nothing, allowed the Rule 4(m) deadline

2

1    to expire, and then over six months later, when these Objections were filed, finally

2    noted the issue.  Given Plaintiff's active litigation in various state, federal, and

3    bankruptcy courts—a litigation history so active that it has prompted the instant

4    Vexatious Litigant Motion—the Court finds Plaintiff's allegation that he was

5    hesitant to contact the Court to be wholly unpersuasive.  Moreover, and as noted in

6    the Report, given that Plaintiff's two claims against the U.S. Marshals Service are

7    premised on a violations of 42 U.S.C. § 1983, and thus are not cognizable against

8    this federal agency, good cause for an extension of time to serve a Defendant whose

9    dismissal would be required simply does not exist.  Accordingly, Plaintiff has failed

10   to meet his burden of showing good cause for his failure to effect service of process

11   on the U.S. Marshals Service and the Report did not err in concluding that this

12   Defendant should be dismissed.

13        Aside from the above matters, nothing else set forth in the Objections

14   warrants discussion, as the remainder of the Objections do not affect, alter, or call

15   into question anything in the Report.

16        The Court now turns to the three Requests for Judicial Notice [Dkts 29, 30,

17   32].  Plaintiff's two Judicial Notice Requests [Dkts. 29, 30] are DENIED, because,

18   while the Court may take judicial notice of court filings and other pleadings under

19   Federal Rule of Evidence 201, the documents submitted by Plaintiff are not relevant

20   to the two Dismissal Motions or Vexatious Litigant Motion currently pending before

21   this Court.  Rather, the court filings and pleadings proffered by Plaintiff concern a

22   separate, closed case that is currently on appeal to the Ninth Circuit.  [*See Moore v.*

23   *Bragg*, C.D. Cal. Case No. 2:15-cv-8021-ODW (GJS).]  The Court is not going to

24   consider whether rulings made in a prior case were proper or not, because, at this

25   juncture, the Ninth Circuit is the proper forum to consider issues relating to this

26

27

28

3

1    closed matter.[1] The Bank Defendants request that the Court judicially notice three

2    recent bankruptcy court filings and pleadings in support of their Vexatious Litigant

3    Motion [Dkt. 32]. This request is GRANTED, as the documents are the type of

4    which judicial notice may be taken and are relevant to, and underscore, the reasons

5    why the Magistrate Judge concluded that designating Plaintiff as a vexatious

6    litigant, and issuing a pre-filing order, is appropriate.

7         Lastly, the Court has considered Defendants' request that the Court require

8    Plaintiff to post a security as part of any pre-filing order to be issued. The Court

9    declines to impose a security at this time, but notes that this issue may be revisited if

10    circumstances change.

11         Having completed its review, the Court accepts the findings and

12    recommendations set forth in the Report. Accordingly, **IT IS ORDERED** that:

13         (1) the Report is accepted;

14         (2) Defendants Wells Fargo Bank, Craig Hansen, Edward Testo, and Asset

15             Reliance, Inc.'s Motion to Dismiss is GRANTED as follows [Dkt. 13]:

16                a. the federal claim against Wells Fargo is dismissed with prejudice;

17                  and

18                b. all state law claims are dismissed without prejudice.

19         (3) all claims against the United Marshals Service are dismissed without

20             prejudice;

21         (4) George Barbour's Motion to Dismiss without prejudice is DENIED AS

22             MOOT [Dkt. 10];

23         (5) Defendants' Vexatious Litigant Motion [Dkt. 14] is GRANTED as set

24             forth in the Report;

25         (6) Plaintiff is hereby declared to be a vexatious litigant;

26

27    [1] Bank Defendants' Motion to Strike Plaintiff's Requests for Judicial Notice [Dkt

28    33] is DENIED AS MOOT in light of the Court's ruling above.

1    (7) A pre filing Order shall be issued as set forth below; and

2    (8) Judgment shall be entered dismissing this action consistent with the

3        foregoing.

4    **PRE-FILING ORDER**

5        The Court enters the following Pre-Filing Order against Plaintiff:

6        (1) Any case-initiating pleading submitted by Plaintiff must be screened to

7    determine if does any of the following: seeks to raise any of the claims

8    alleged in this action; attacks, seeks to vacate, void or expunge, or otherwise

9    seeks to challenge in any way – whether directly or indirectly – Wells Fargo's

10   $7.1 million judgment lien or Wells Fargo's right to levy and sell personal

11   property of Moore and the other Judgment Debtors; or seeks to litigate

12   ownership of 6150 Shenandoah Avenue, Los Angeles, California 90065

13   ("Shenandoah Residence") or the personal property at the Shenandoah

14   Residence.

15       (2) Any case-initiating pleading submitted by Plaintiff raising any such

16   matter(s) is presumptively barred by reason of Plaintiff's vexatious litigant

17   status and therefore will not be filed unless:  Plaintiff concurrently submits a

18   motion seeking leave to file the pleading that sets forth adequate justification

19   for its filing and the initiation of the new case; and a District Judge or

20   Magistrate Judge of this Court grants such leave and directs that the pleading

21   be filed and the new case be initiated.

22       (3) To effectuate this Pre-Filing Order, the Clerk of the Court:  shall no

23   longer file any case-initiating pleading of any type submitted by Plaintiff

24   without first obtaining written authorization of a District Judge or Magistrate

25   Judge of this Court; and shall present any case-initiating pleading of any type

26   proffered by Plaintiff first to a District Judge or Magistrate Judge for

27   screening review prior to filing and a determination of whether such pleading

28   falls within, or outside of, the scope of the Pre-Filing Order.

1    (4) Plaintiff is ordered to submit a copy of this Pre-Filing Order with any

2    case-initiating pleading he proffers to this Court.

3

4    **IT IS SO ORDERED.**

5

6    DATE: <u>May 17, 2018</u>

7    OTIS D. WRIGHT II
     UNITED STATES DISTRICT JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

6

# REQUEST FOR JUDICIAL NOTICE

8

*Related DoJ*

**PAID**

JUN 3 0 2017

Clerk, US District Court
COURT 4612

FILED

2017 JUN 30  AM 11: 24

BY:_____

**IVAN RENE MOORE**
1236 South Redondo Blvd
Los Angeles, CA 90019

**PLAINTIFF, In Pro Se**
(323) 932-9439

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

**LACV17   04828-ODW-GJS**

| | |
|---|---|
| **IVAN RENE MOORE,** | ) Case No.: |
| Plaintiff, an individual; | ) **VERIFIED FIRST COMPLAINT FOR:** |
| vs. | ) 1. VIOLATION OF 42 U.S.C § 1983 |
| | ) 2. VIOLATION OF RIGHTS UNDER |
| **WELLS FARGO BANK, N.A., a National Bank;  UNITED STATES MARSHALS; a US Agency; ASSET RELIANCE, INC.; a California Corporation; CRAIG HANSEN an individual , and as an Agent for WELLS FARGO BANK, N.A; EDWARD D. TESTO, an individual , and as an Agent for ASSET RELIANCE, INC.; GEORGE BARBOUR, an individual, AND DOES 1 THROUGH 25,** | ) 5TH AMENDMENT TO THE UNITED STATES CONSTITUTION AND THE CALIFORNIA CONSTITUTION |
| | ) 3. CONVERSION |
| | ) 4. INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE |
| | ) 5. NEGLIGENCE INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE |
| | ) 6. TRESPASS TO CHATTEL |
| | ) 7. REPLEVIN |
| | ) 8.  VIOLATION OF BUSINESS AND PROFESSIONS  CODE § 17200 ET SEQ |
| Defendants. | ) 9. NEGLIGENCE |
| | ) 10. FRAUD AND DECEIT |
| | 11. VIOLATION OF US BANKING STATUTES |
| | 12. CONSTRUCTIVE TRUST |
| | 13. ACCOUNTING |
| | 14. PUNITIVE DAMAGE ALLEGATION |

**DEMAND FOR JURY TRIAL**

**ORIGINAL**

1

# REQUEST FOR JUDICIAL NOTICE

# 9

```
 1                UNITED STATES BANKRUPTCY COURT

 2               CENTRAL DISTRICT OF CALIFORNIA

 3                         --oOo--

 4  In Re:                      ) Case No. 2:16-bk-22878-BR
                                )
 5  KIMBERLY BARBOUR,           ) Chapter 7
                                )
 6            Debtor.           ) Los Angeles, California
    _____) Tuesday, May 10, 2022
 7                              ) 2:00 p.m.
    MOORE,                      )
 8                              ) Adv. No. 2:22-ap-01058-BR
              Plaintiff,        )
 9                              )
         vs.                    )
10                              )
    BARBOUR, ET AL.,            )
11                              )
              Defendants.       )
12  _____)
                                )
13  MOORE,                      ) Adv. No. 2:22-ap-01080-BR
                                )
14            Plaintiff,        )
                                )
15       vs.                    )
                                )
16  BARBOUR, ET AL.,            )
                                )
17            Defendants.       )
18  _____)

19

20

21

22

23

24
    Proceedings recorded by electronic sound recording;
25  transcript produced by transcription service.
```

ii

1  STATUS CONFERENCE RE COMPLAINT
   1. DEBTOR'S FRAUD PURSUANT TO
2  28 USC SECTION 523(a)(2)(A)
   2. DEBTOR'S FRAUD PURSUANT TO
3  28 USC SECTION 523(a)(2)(B)
   3. DEBTOR'S FRAUD PURSUANT TO
4  28 USC SECTION 523(a)(4)
   4. DEBTOR'S FRAUD PURSUANT TO
5  28 USC SECTION 523(a)(6)
   5. LARCENY/CONTINUING
6  CONVERSION
   7. FRAUDULENT TRANSFERS
7  8. CONSTRUCTIVE TRUST
   9. VIOLATION OF PENAL CODE
8  SECTION RECEIVE AND/OR
   CONCELING STOLEN PROPERTY
9  ALLEGATION FOR PUNITIVE
   DAMAGES
10
   HRG. RE MOTION TO DISMISS
11 ADVERSARY PROCEEDING IN ITS
   ENTIRETY PURSUANT TO FEDERAL
12 RULE OF CIVIL PROCEDURE
   12(b)(6)
13
   STATUS CONFERENCE RE COMPLAINT
14 FOR DAMAGERS FOR
   1. BANKRUPTCY FRAUD (18 U.S.C.
15 SECTION 157)
   2. BANKRUPTCY FRAUD (18 U.S.C.
16 SECTION 152
   3. BANKRUPTCY FRAUD (18 U.S.C.
17 SECTION 521)
   4. INDEPENDENT ACTION FOR
18 RELIEF FROM DISCHARGE ORDER TO
   REMEDY FRAUD UPON THE COURT
19 5. CAUSES OF ACTION UNDER 11
   U.S.C. SECTION 523(a)(6)
20 6. CAUSES OF ACTION UNDER 11
   U.S.C. SECTION 727(a)(3)
21
   HRG. RE MOTION TO DISMISS
22 ADVERSARY PROCEEDING IN ITS
   ENTIRETY PURSUANT TO FEDERAL
23 RULE OF CIVIL PROCEDURE
   12(b)(6)
24

25

iii

1              TRANSCRIPT OF PROCEEDINGS
       BEFORE THE HONORABLE BARRY RUSSELL
2          UNITED STATES BANKRUPTCY JUDGE

3  APPEARANCES:

4  For the Debtor:              STEVEN A. SHULMAN, ESQ.
                                Leonard, Dicker & Schreiber
5                               9430 Olympic Boulevard
                                Suite 400
6                               Beverly Hills, California
                                  90212
7                               (310) 551-1987

8  For the Creditor:            IVAN RENE MOORE, IN PRO PER
                                1236 Redondo Boulevard
9                               Los Angeles, California 90019
                                (323) 932-9439
10

11 Court Recorder:              Wanda Toliver
                                United States Bankruptcy Court
12                              Edward R. Roybal Federal
                                  Building
13                              255 East Temple Street
                                Los Angeles, California 90012
14

15 Transcriber:                 Briggs Reporting Company, Inc.
                                9711 Cactus Street
16                              Suite B
                                Lakeside, California 92040
17                              (310) 410-4151

18

19

20

21

22

23

24

25

*Briggs Reporting Company, Inc.*

11

1  Fargo about. It's the same property that the Federal

2  District Court, Central District, said, stop suing about

3  this personal property.

4          THE COURT: Well, that's what Judge Wright said.

5          MR. SCHUMAN: That's right. Stop suing about the

6  same personal property. It's not just a vexatious litigant

7  suing a lot, it's a vexatious litigant suing over and over

8  again about the same property.

9          THE COURT: I understand that. We had a

10  conversation last time. I was quite surprised by your

11  response. You argue in your papers, which I disagree with,

12  that the district court's vexatious litigant applies here.

13  It just does not.

14          And then I asked you, and I was surprised, because

15  you could of course file, if you wish to, the same motion,

16  which would have -- and depending on the result, would

17  result in here. And I was started, quite frankly, since you

18  cite Judge Wright's opinion that it applies here, it

19  doesn't, but you could do the same here. And you -- did you

20  talk about that with your client?

21          MR. SCHUMAN: Your Honor, we --

22          THE COURT: Because you had --

23          MR. SCHUMAN: -- we're -- at this point, you know,

24  everything that we do costs money, even if we don't bill all

25  of it.

39

1  relative, a mother I think, that had a serious medical

2  problem, and called my staff and said, can we do that in

3  Zoom?  And that -- so that's why one side was here in

4  person.  But it's only something like that.  So it's only

5  fair that it should be the same for both.

6          MR. SCHUMAN:  Of course, your Honor.  Thank you.

7          THE COURT:  All right.  Thank you, all.

8      (Proceedings concluded.)

9

10

11          I certify that the foregoing is a correct

12  transcript from the electronic sound recording of the

13  proceedings in the above-entitled matter.

14

15  /s/ Holly Steinhauer         6-21-22
    Transcriber                  Date
16

17

18

19

20

21

22

23

24

25

*Briggs Reporting Company, Inc.*

# REQUEST FOR JUDICIAL NOTICE

# 10

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
## Civil Division
Central District, Stanley Mosk Courthouse, Department 56

**BC480013**                                                    August 26, 2020
**IVAN RENE MOORE VS KIMBERLY MARTIN-BRAGG**                             8:30 AM

Judge: Honorable Holly J. Fujie           CSR: None
Judicial Assistant: O.Chavez              ERM: None
Courtroom Assistant: B.Chavez             Deputy Sheriff: None

did not set forth a deadline for Defendant to comply with such judgment. Thus, due to the lack of a clear and definite deadline therein, Plaintiff is not in violation of the Court's November 8, 2013 interlocutory judgment by a purported failure to return the property as of this date.

Therefore, Plaintiff's request for contempt to obtain the subject property is not the appropriate procedural mechanism.

Issue No.2: Impossibility

"The facts essential to jurisdiction for a contempt proceeding are (1) the making of the order; (2) knowledge of the order; (3) ability of the respondent to render compliance, [and] (4) willful disobedience of the order." (Application of Liu (1969) 273 Cal.App.2d 135, 140.)

The Court finds that based on Defendant's declaration, there is no possibility that Defendant can comply with the Court's November 8, 2013 judgment. Defendant has clearly declared, under the penalty of perjury, that she no longer possesses any of the property at issue in the November 8, 2013 judgment due to the writ executed by Wells Fargo. Thus, under Liu, there is no basis for this Court to hold Defendant in contempt or order an OSC re: contempt. Plaintiff provides no legal authority to support an argument that inconsistent or contradictory statements in pleadings or affidavits rise to the level of contemptable behavior, or that inconsistent and contradictory statements are per se false and warrant a finding of contempt.

Plaintiff only presents speculative facts in his declaration to support contempt against Defendant. A court, however, is to accept a self-serving declaration filed by a party. (Scalf v. D.B. Log Homes, Inc. (2005) 128 Cal.App.4th 1510, 1521-1522.) Plaintiff has presented no evidence that Defendant is in fact aware that the property at issue is in her garage.

Therefore, the Court DENIES WITH PREJUDICE Plaintiff's renewed motion in its entirety.

Moving party is ordered to give notice of this ruling.

Dated this 26th day of August 2020

HOLLY J. FUJIE

_____
Hon. Holly J. Fujie
Judge of the Superior Court

# REQUEST FOR JUDICIAL NOTICE

## 11



Sheriff's Raid On 6150 Shenandoah Ave July 7 2021 Debtor Martin-Bragg (aka) Barbour the on Stairs

# REQUEST FOR JUDICIAL NOTICE

12



Sheriff's Raid on 7/7/21 found automobile Debtor Bragg claimed she had no knowledge of the location of the automobile. LASD found stolen car at the Debtor Residence on 7/7/21 at 6150 Shenandoah Ave Martin- Bragg- Barbour

# REQUEST FOR JUDICIAL NOTICE

# 13



SHERIFF'S RAID AT 6150 SHENANDOAH AVE LA CA ON JULY 7 2021 AND REMOVAL OF THE STOLEN AUTOMOBILE IN THE DEBTOR'S POSESSION AND CONTROL.

The Debtor's Martin Bregg (aka) Barbour

# REQUEST FOR JUDICIAL NOTICE

# 14



Sherriff's Raid July 7 2021 6150 Shenandoah Ave Moore's legal and personal docucmnts Debtor/Appellee Martin Bragg in Pic